533 A.2d 994

COMMONWEALTH of Pennsylvania, Appellee,

v.

Michael Edwin JOHNSON, Appellant.

Supreme Court of Pennsylvania.

Submitted Sept. 21, 1987.

Decided Dec. 2, 1987.

528

Richard E. Bower, Asst. Public Defender, Uniontown, for appellant.

Gerald R. Solomon, Dist. Atty., Uniontown, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

We must determine in this appeal whether the following summation to a jury, followed by a cautionary instruction, constitutes incurable prosecutorial misconduct which requires a new trial:

MR. ZEGLEN: They have been found guilty in any event. However, I cannot pick and choose my witnesses. Sure, I would like to have law-abiding citizens as witnesses. The problem is that crimes usually aren't committed in front of law-abiding citizens. It is other criminals who see crimes committed. They are the ones who see the crimes. Robert Ahlborn and Scott Dunn, they are criminals. They have lied. The defendant, Michael Johnson, is their friend. What does that tell you about Michael Johnson? Ask yourselves that. Who do criminals associate with?

MR. BOWER: Objection.

THE COURT: Objection sustained. The jury will disregard that last statement.

MR. BOWER: Your Honor, may we approach the bench?

THE COURT: You may.

SIDEBAR DISCUSSION HELD ON THE RECORD

MR. BOWER: Your Honor, at this time, I think that is extremely prejudicial, and I would like a mistrial based on prosecutorial misconduct.

THE COURT: The Court does not feel that it is that prejudicial and with our cautionary instructions, we do not think that the motion is a proper motion, and we refuse it.

MR. BOWER: Thank you, Your Honor.

END OF SIDEBAR DISCUSSION

MR. BOWER: Your Honor, may we have a more explicit cautionary instruction on that?

THE COURT: I believe our instruction is sufficient.

The Appellant was convicted of robbery, theft, and criminal conspiracy. The Superior Court at 398 Pa.Superior Ct. 354, 502 A.2d 246 (1985), affirmed, but President Judge Spaeth, although concurring as to other allegations, also dissented on the grounds that the prosecutor's misconduct mandates a new trial. We granted review in order to address that specific issue. On the present appeal, we agree with Judge Spaeth's conclusion in all respects.

A prosecutor, of course, must have reasonable latitude in presenting his case and must be free as well to make his arguments with "logical force and vigor." *Commonwealth v. Cronin*, 464 Pa. 138, 143, 346 A.2d 59, 62 (1975). In addition, we have ruled consistently that not every intemperate or improper remark by the prosecution requires a new trial. *Commonwealth v. Jarvis*, 482 Pa. 598, 394 A.2d 483 (1978); and *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977).

On the other hand, we have decided with equal clarity that there are lines of permissible conduct which cannot be crossed in the interests of basic fairness and justice. Because a jury tends to attach special importance to the Commonwealth's arguments, we are compelled to guard against utterances which unduly inflame and prejudice those members. *Commonwealth v. Kuebler*, 484 Pa. 358, 399 A.2d 116 (1979).

■ In broad terms, we have drawn the first and brightest line at the point where the language and inferences of the summation no longer relate back to the evidence on the record. In effect, the prosecutor is bound by our law to argue only those inferences which derive reasonably from the evidence of the trial. *Commonwealth v. Joyner*, 469 Pa. 333, 365 A.2d 1233 (1976); *Commonwealth v. Maloney*, 469 Pa. 342, 365 A.2d 1237 (1976). The prosecution cannot base its summation on a personal belief that the defendant is guilty. Such assertions of personal opinion are blatantly

improper because they invade the province of the jury which alone bears the duty of determining criminal culpability. Expressions of personal belief, therefore, are improper comment as attempts to distract the jury from its appointed task of rendering a verdict based on the evidence. The principle runs long and deep in our jurisprudence. For example, see, *Commonwealth v. Smith*, 490 Pa. 380, 416 A.2d 986 (1980), *Commonwealth v. Lipscomb*, 455 Pa. 525, 317 A.2d 205 (1974), and the older cases of *Commonwealth v. Wilcox*, 316 Pa. 129, 173 A. 653 (1934), and *Commonwealth v. Principatti*, 260 Pa. 587, 104 A. 53 (1918). Over a half century ago, we established the rule that "expressions of personal belief in a defendant's guilt have no legitimate place in a district attorney's argument." *Commonwealth v. Capalla*, 322 Pa. 200, 185 A. 203 (1936). Within this broad context, of course, we also permit prosecutorial comment which has been inspired by the improper closing arguments of defense counsel. *Perkins*, 373 A.2d at 1086, and *Commonwealth v. Van Cliff*, 483 Pa. 576, 397 A.2d 1173, *cert. denied*, 441 U.S. 964, 99 S.Ct. 2412, 60 L.Ed.2d 1070 (1979).

Beyond this general rule, we have drawn more specific lines in a veritable legion of cases which outlaw inferential language flowing from specific fact patterns. In *Commonwealth v. Black*, 480 Pa. 394, 390 A.2d 750 (1978), and cases cited therein, we struck down familiar closing arguments which called for guilt unless the deceased victim could be reincarnated and "walk through the door." In *Commonwealth v. Anderson*, 490 Pa. 225, 415 A.2d 887 (1980), we found error where the defendant was referred to as an "executioner" carrying out an "assassination." In *Commonwealth v. Gilman*, 470 Pa. 179, 368 A.2d 253 (1977), it was decided that the district attorney's reference to the defendant as "judge, jury, prosecutor, and ultimately executioner" was improper. In sum, we have not hesitated to set aside personal prosecutorial assertions which lack a proper evidentiary foundation and which unjustly stigmatize the accused in the eyes of the jury.

■ Our next line of inquiry addresses the issue of whether the trial court's cautionary instruction was sufficient to overcome any prejudice generated by the prosecution. In Mr. Justice Larsen's opinion in *Commonwealth v. Morris*, 513 Pa. 169, 519 A.2d 374 (1986), we declared once again that whether "the exposure of the jury to improper evidence can be cured by an instruction depends upon a consideration of all the circumstances," (quoting *Commonwealth v. Richardson*, 496 Pa. 521, 437 A.2d 1162 [1981]). Moreover, an immediate curative instruction to the jury can alleviate the harmful effects of the improper admission of evidence. *Commonwealth v. Williams*, 470 Pa. 172, 368 A.2d 249 (1977), which concluded further in this respect that the award of a new trial is not the only effective remedy in an otherwise fair trial. 368 A.2d at 252. Also see, *Commonwealth v. Groce*, 452 Pa. 15, 303 A.2d 917 (1973), and *Commonwealth v. Martinolich*, 456 Pa. 136, 318 A.2d 680, *cert. denied*, 419 U.S. 1065, 95 S.Ct. 651, 42 L.Ed.2d 661 (1974).

*Morris, supra,* dealt with the particular problem of the impermissibility of the prosecutor's reference during trial to the defendant's criminal record. Additionally, following a curative instruction and a pointed charge to the jury to disregard the reference, the defense did not move for a mistrial, thereby inferring satisfaction with the court's efforts to neutralize the impropriety. In the present case, by contrast, the issue specifically concerns closing remarks to the jury as well as a demand for a new trial. Under *Morris* and *Martinolich*, both *supra*, we continue to hold that there is no *per se* rule which requires the grant of a new trial whenever the district attorney acts improperly.

More precisely, nevertheless, our rule governing the impact of prejudice in closing arguments is the "unavoidable prejudice test" as best articulated in *Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975):

... [W]here the language of the district attorney is intemperate, uncalled for and improper, a new trial is not necessarily required. *Commonwealth v. Crittenton*, 326

Pa. 25, 31, 191 A. 358 (1937); *Commonwealth v. McHugh*, 187 Pa.Super. 568, 577, 145 A.2d 896 (1958). The language must be such that its "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Simon*, 432 Pa. 386, 394, 248 A.2d 289, 292 (1968). See also, *Commonwealth v. Meyers*, 290 Pa. 573, 139 A. 374 (1927). The effect of such remarks depends upon the atmosphere of the trial, *Commonwealth v. Dickerson*, 406 Pa. 102, 110, 176 A.2d 421 (1962); *Commonwealth v. Del Giorno*, 303 Pa. 509, 519, 154 A. 786 (1931), and the proper action to be taken is within the discretion of the trial court. *Commonwealth v. Silvis*, 445 Pa. 235, 237, 284 A.2d 740 (1971); *Commonwealth v. Simon, supra....*

Under this test, we are required to judge whether the mental bias of the jury has been so "fixed" as to implicate the truth-finding function itself. By any standard, such a test imposes a heavy juristic burden.

■ While we eschew dogmatic definitions and continue to profess a meticulous regard for legal continuities, the utterances employed by the prosecution in this case amount to personal assertions constituting improper comment to the point where it cannot be argued reasonably that a curative instruction could wipe away the fault. If this be not incurable prejudice, then such error does not exist at all, and our past decisions mean little more than babbling empty phrases in dark corners.

We analogize this conclusion to the use of pre-verdict inflammatory epithets which were voided in *Anderson* and *Lipscomb, supra,* and other similar cases. By juxtaposing the accused and his lying witnesses, the inescapable connotation is that the accused also was a liar at trial. In *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971), we reversed a conviction because the prosecutor branded the defendant's testimony a lie. In the absence of a proper

foundation, Judge Spaeth was correct in finding a clear inference of "guilt by association."

Accordingly, the decision of the Superior Court is reversed, and the case is remanded for a new trial.

NIX, Chief Justice, concurs in the result.

McDERMOTT, Justice, dissents.

HUTCHINSON, Former Justice, did not participate in the decision of this case.