551 A.2d 239

COMMONWEALTH of Pennsylvania

v.

**Frederick SANDERS, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 8, 1988.

Filed Dec. 5, 1988.

Petition for Allowance of Appeal
Denied April 13, 1989.

MaryAnn F. Swift, Philadelphia, for appellant.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com., appellee.

Before WIEAND, DEL SOLE and HESTER, JJ.

HESTER, Judge:

Frederick Sanders appeals from the judgment of sentence entered January 29, 1987, in the Court of Common Pleas of Philadelphia County, following his conviction by a jury of robbery and conspiracy. He was sentenced to an aggregate term of imprisonment of five to ten years. Appellant raises

numerous assertions of error on appeal. Finding no merit to them, we affirm.

At approximately 1:30 a.m. on October 14, 1985, Noah Afuwape, a cab driver for the Yellow Cab Company in Philadelphia, was driving a cab on Woodland Avenue when two young males, appellant and a companion, flagged him down. Afuwape stopped the cab and the two men opened the back doors and sat in the back seat. Mr. Afuwape looked at the men as they entered the cab and kept the interior light on so he could see them during the drive. They asked to be driven to the 8600 block of Lindbergh Boulevard. During the course of the ten minute ride, he periodically observed appellant, who was seated on the passenger's side, through the rear-view mirror.

Arriving at the requested destination, appellant told Afuwape to stop, and appellant's companion put a sharp object to Afuwape's throat. Appellant exited the vehicle, opened the front door on the passenger's side, and sat next to Afuwape. Appellant asked him if he was carrying a weapon. Afuwape answered in the negative. Appellant then reached into Afuwape's pocket and removed a wallet and over $100.00 in cash. Appellant told him that he would not be harmed if he cooperated. Appellant kept the cash and returned the wallet. He then instructed Afuwape to get out of the cab, and Afuwape complied. With appellant at the wheel, the cab drove off. Afuwape immediately reported the incident to the police. The next day, the cab was discovered abandoned in Ohio. Appellant and his companion were subsequently arrested.

■ Appellant first argues that the trial court erred in denying his motion to dismiss under Rule 1100. This argument is without merit.

Pa.R.Crim.P. 1100(c)(3)(ii) provides: "In determining the period for commencement of trial, there shall be excluded therefrom ... such period of delay at any stage of the proceedings as results from ... any continuance granted at the request of the defendant or his attorney."

[W]here a continuance requested by the defendant is granted, the trial shall be rescheduled for the earliest date or period consistent with the continuance request and the court's business, and the entire period of such continuance may then be excluded....

Pa.R.Crim.P. 1100, comment. *See also Commonwealth v. Kuhn,* 327 Pa.Super. 72, 475 A.2d 103 (1984).

Instantly, the criminal complaint was filed October 18, 1985. Therefore, the run-date under Rule 1100 would have been April 16, 1986. However, at a pre-trial hearing on February 25, 1986, a representative of the Defenders Association indicated that an attorney would not be available to represent appellant until May 5, 1986. The court scheduled trial for the earliest possible date after that, May 29, 1986. *See* Notes of Testimony, (N.T.), 5/29/86, at 8. The trial court's opinion notes that the continuance was granted without objection. Trial court opinion at 4. We agree with the trial court that there was no violation of Rule 1100 as the delay was attributable to the defense continuance.[1]

Appellant next argues that the trial court improperly denied his motion to suppress identification, statements, and physical evidence. He argues that at the time of his arrest, the police had neither reasonable suspicion to stop him nor probable cause to arrest him, thus poisoning the evidence obtained as a result of the arrest. In addition, he asserts that the identification procedures were tainted by a suggestive confrontation and an illegal post-arrest photograph identification procedure. We find no merit to these assertions.

With respect to whether appellant's arrest was effected with probable cause, we note the following. On October 15,

1. Appellant argues that the case should have been transferred to a different judge, and that the individualized court calendar program by which cases are scheduled in Philadelphia is not in compliance with Pa.R.Crim.P. 6, which requires that local rules be filed with certain offices and published in the Pennsylvania Bulletin. This claim is meritless. Appellant does not argue that he objected to either the court's scheduling of the trial or the local rule prior to May 29. Nor does he elucidate whether, in fact, another judge could have tried the case at an earlier date.

1985, Ohio State Trooper Scott Tanner, patrolling the Ohio Turnpike, received a radio call from a toll booth collector near the Indiana–Ohio state line. The collector advised the trooper that a taxi cab had approached the toll booth but the driver had no money to pay the toll. The toll collector instructed the driver to pull to the side of the road,[2] but instead, the driver made a U-turn and headed back the way he had come. Trooper Tanner proceeded toward the toll booth. While on his way, he received another call from the toll collector advising him that the taxi cab had been observed heading back toward the toll booth but that it had stopped beneath an overpass near the booth. The toll collector reported that he observed two young, black males exit the cab and walk up a hill onto an overpass.

Trooper Tanner arrived at the site of the parked cab and noted that it bore a Pennsylvania license plate. He observed that the radio and two speakers were missing; they appeared to have been removed by force. Tanner checked the license number and the vehicle identification number (VIN) through the National Crime Information Center (NCIC), but discovered nothing to indicate that it was a stolen vehicle. While Tanner was checking the cab, a farmer on the overpass called down to him and asked if he was looking for two young, black males. The trooper answered in the affirmative, and the farmer advised him that they were walking northbound on County Road. The trooper testified that the circumstances surrounding his discovery of the cab aroused his suspicion. "A person that makes their living driving a taxi cab that would be traveling across country or through other states on a toll road I'm sure would plan ahead far enough to carry some money for tolls." N.T., 5/29/86, at 58. He also stated that he thought it odd that a Pennsylvania cab was heading west and was nearly at the Ohio–Indiana border.

2. Trooper Tanner testified that in situations where a driver is unable to pay a toll on the Ohio Turnpike, it is standard procedure for the toll collector to summon a trooper and instruct the driver to pull to the side of the road.

The trooper proceeded in the direction the farmer had reported seeing the young men. He noticed two young, black males coming from a gas station. They matched the descriptions given to him by the toll booth collector. He pulled up to them and inquired if they had abandoned a taxi cab. They answered in the affirmative. The trooper testified, "Neither of the fellows appeared to be old enough to drive a taxi cab." N.T., 5/29/86, at 63–64. The youths told him they had run out of gas and had come into town to cash a check, and that they were on their way back to the cab. The trooper offered them a ride back to the cab. They did not offer resistance. Consistent with the Ohio Highway Patrol policy for anyone who is to be transported in a patrol car, the trooper patted down the young men. Once in the police car, neither would admit to being the driver of the cab. The trooper testified, "I asked both of them ... if they were a taxi cab driver as a profession, and they said no, neither one worked for the taxi cab company." *Id.* at 66. At this, the trooper decided to ascertain whether the cab was stolen. He drove to the toll booth and called a Yellow Cab Company telephone number he had copied from the back of the cab. A cab company dispatcher informed him that the cab had been stolen in an armed robbery. The trooper informed the young men what he had learned and read them their *Miranda* rights.

We find that the tropper's actions were not repugnant to fourth amendment guarantees. The United States Supreme Court has set forth the following standards for the temporary seizure of persons.

> The Fourth Amendment applies to seizures of the person, including brief investigatory stops such as the stop of the vehicle here.... *Terry v. Ohio,* 392 U.S. 1, 16–19, 88 S.Ct. 1868, 1877–1879, 20 L.Ed.2d 889 (1968). An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be engaged in criminal activity ... *Terry v. Ohio, supra,* 392 U.S., at 16–19, 88 S.Ct. at 1877–1879.

> . . . .

[T]he totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particularized person stopped of criminal activity....

The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all the circumstances.

. . . .

The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior, jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. Chief Justice Warren, speaking for the Court in *Terry v. Ohio, supra*, said that, "[t]his demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence." *Id.* 392 U.S. at 21, n. 18, 88 S.Ct., at 1880, n. 18 (emphasis added).

*United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981). Moreover, the court has also held that a *Terry* stop is permissible to investigate *completed* criminal activity.

[W]here police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identifi-

cation in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice. Restraining police action until after probable cause is obtained would not only hinder the investigation, but might also enable the suspect to flee in the interim and to remain at large. Particularly in the context of felonies or crimes involving a threat to public safety, it is in the public interest that the crime be solved and the suspect detained as promptly as possible. The law enforcement interests at stake in these circumstances outweigh the individual's interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes.

*United States v. Hensley*, 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985).

█ Instantly, the trooper's actions were commensurate with the level of suspicion aroused by the circumstances. At first, he merely offered the young men a ride back to the cab they admitted having abandoned. During the course of the ride, neither passenger admitted to being the cab's driver and they stated that neither was a cab driver by profession. As a result of these responses, the trooper's suspicions were sufficiently aroused to ascertain if the cab was stolen.

It is not clear at what point prior to the arrest the trooper's actions amounted to a custodial stop. Surely, such a stop was reasonable by the time the young men told the trooper that they did not work for a cab company. This is especially true in light of the fact that they did not look old enough to drive a cab; the cab was from Pennsylvania but was headed west in Ohio and had nearly crossed into Indiana; and apparently neither young man had sufficient funds to pay the toll. The cumulative effect of these factors was sufficient to arouse a suspicion in a prudent law enforcement officer that the cab was stolen. This suspicion proved correct. We find that any custodial stop which occurred was not violative of constitutional guarantees. Moreover, it scarcely seems necessary to cite cases to

uphold the validity of the arrest which occurred after the trooper was advised that the cab was indeed stolen in the course of an armed robbery. Accordingly, this argument is meritless.

■ Appellant also maintains that the photograph identification was unduly suggestive. He argues that the complainant was shown a photograph display of nine photographs, including one of appellant, but that the photograph of appellant pictured him without a shirt, whereas all the other photographs except one pictured their subjects wearing shirts. Moreover, the photograph of appellant was of a "different gloss" than the others, and the two shirtless subjects were the darkest males in the group.

This assertion is meritless. Appellant has not included in the record the photographs from the array, thus precluding us from making an independent determination as to their suggestiveness. Nonetheless, we note that the complaining witness was shown nine photographs and asked if any of the subjects portrayed one of the males involved in the robbery. N.T., 5/29/86, at 112–13. He was not given any information about the individuals in the photographs. *Id.* at 113, 157.

■ Furthermore, even if the photographs were in some sense suggestive, we find that there was an independent basis for the complaining witness' in-court identification. Our supreme court, in *Commonwealth v. McGaghey*, 510 Pa. 225, 228–29, 507 A.2d 357, 359 (1986), wrote:

The problem with an impermissible suggestive identification is the potential for misidentification, resulting in a due process violation if that identification is admitted at trial. *Commonwealth v. Silver*, 499 Pa. 228, 452 A.2d 1328 (1982). Suggestiveness alone will not forbid the use of an identification, if the reliability of a subsequent identification can be sustained. *Commonwealth v. Fowler*, 466 Pa. 198, 352 A.2d 17 (1976) (Plurality Opinion). To do so, the Commonwealth must establish that the in-court identification resulted from the criminal act and not the suggestive encounter. *Fowler, supra.*

Most recently in *Commonwealth v. James*, 506 Pa. 526, 486 A.2d 376 (1985), we reiterated the necessary factors in determining whether a victim had an independent basis for an in-court identification:

> ... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. (citing *Commonwealth v. Slaughter*, 482 Pa. 538, 546, 394 A.2d 453, 457 (1978))

506 Pa. at 534, 486 A.2d at 380. In *James*, we determined that a subsequent in-court identification was not tainted by the suggestiveness of the preliminary hearing identification, because the victim observed her assailant for five to ten minutes during the assault, accurately described her assailant to the police within forty-five minutes of the altercation, and identified her assailant from a photographic array six weeks after the assault. Thus, we concluded that the "... victim did indeed crystalize her identification of Appellant during the assault...." 506 Pa. at 533, 486 A.2d at 380.

Instantly, the complaining witness testified that he observed appellant at the time of the criminal incident. N.T., 6/2/86, at 8, 10. He further testified that neither appellant nor his companion wore any covering over their faces. *Id.* at 11. When asked if either wore a hat or glasses or anything else, he answered, "absolutely no." *Id.* The complaining witness stated that he looked at appellant, who was seated on the passenger's side, during the ten minute cab ride. *Id.* at 10. Appellant told the complaining witness to stop the cab and then he moved to the front seat next to him. The complaining witness again looked at appellant. *Id.* at 15. The complaining witness further described how appellant was dressed, *Id.*, at 18, and the style of the hair cut he wore. *Id.* at 19, 29. He further testified:

Q. Mr. Afuwape, when you went to the lineup ... did
you pick out anybody in the lineup?
A. Yes.
Q. Who did you pick out?
A. The defendant.
Q. Mr. Afuwape, is there any doubt in your mind that it
was this defendant Frederick Sanders who drove your cab
away on October 14, 1985?
A. There's no doubt. He is.

*Id.* at 54.

Moreover, the complaining witness immediately reported
the incident to the police. A few days later, the complain-
ing witness gave a detective a detailed description of appel-
lant. *Id.* at 30–31. At the preliminary hearing, the witness
positively identified appellant as one of the two men who
robbed him. N.T., 1/21/86, at 5–8.

We conclude that even if the photo identification was in
some sense suggestive, the victim did, indeed, crystalize his
identification of appellant during the criminal incident.
There is clear and convincing evidence that the in-court
identification resulted from the victim's observations during
the cab ride, and not from a suggestive photo array. Con-
sequently, appellant is not entitled to relief on the basis of
this argument.

Appellant also argues that his constitutional rights were
violated due to the fact that he was not represented by
counsel at the photo identification. This argument lacks
merit.

 A suspect has the right to be represented by counsel
at a photograph array. *Commonwealth v. Whiting,* 439
Pa. 198, 266 A.2d 738 (1970); *Commonwealth v. Ferguson,*
327 Pa.Super. 305, 475 A.2d 810 (1984). In *Commonwealth
v. McKnight,* 311 Pa.Super. 370, 457 A.2d 931 (1983), we
held that where there has not yet been an arrest for the
offense in question, but where the defendant is in custody
pursuant to a different offense, the right to counsel at the
photograph array does not attach.

■ Instantly, appellant was arrested in Ohio for receiving stolen property, a charge arising out of the same incident as the crimes for which he was convicted instantly. N.T., 5/29/86, at 127. In Pennsylvania, the victim was shown a series of photographs in an attempt to have him identify the perpetrator. Appellant was not afforded the right to be represented by counsel at the photo array. The Commonwealth argues that this case falls within the ambit of *McKnight, supra,* and that appellant had no constitutional right to be represented at the photograph array. Appellant argues, on the other hand, that he was being held in Ohio merely for so long as the Pennsylvania authorities could acquire enough evidence to extradite him to this Commonwealth, and contends that it is erroneous to view the Ohio charges as separate from the instant charges. Therefore, he argues he was improperly denied the right to be represented by counsel at the array.

We agree with the Commonwealth, and find persuasive the rationale which the prosecution presented in support of its position at the suppression hearing:

If in fact he was not being held on any charge in Ohio but was in custody merely for Pennsylvania purposes, I think that scenario might present a different situation than we have here.

Here he is under arrest for charges in Ohio. Now, the fact that Pennsylvania also might prosecute them ... I think is different as long as he is legitimately being held in Ohio, and it's not any subterfuge or a mere holding until Pennsylvania can get there.

N.T., 5/29/86, at 127. Accordingly, we do not find merit in this argument.

■ Appellant next contends that the trial court improperly imposed the five-year mandatory minimum sentence required by 42 Pa.C.S. § 9713. That statute requires the imposition of a minimum sentence of five years for those convicted of robbery and other offenses committed "in or near public transportation." 42 Pa.C.S. § 9713(a). Section 9713(b) defines "in or near public transportation":

[A] crime shall be deemed to have occurred in or near public transportation if it is committed in whole or in part in a vehicle, station, terminal, waiting area or other facility used by a person, firm, corporation, municipality, municipal authority or port authority in rendering passenger transportation services to the public or a segment of the public or if it is committed in whole or in part on steps, passageways or other areas leading to or from or in the immediate vicinity of such a public transportation vehicle, station, terminal, waiting area or other facility.

Appellant argues that this statute was not intended to apply to privately owned enterprises, such as the Yellow Cab Company. This argument is meritless.

Appellant and the Commonwealth agree that no appellate decision has directly addressed this issue. Nevertheless, the plain meaning of the words of the statute, cited *supra*, lead us to conclude that the cab in question is a vehicle which renders passenger transportation services to the public or a segment of the public, thus making the offense one which was committed "in or near public transportation." The legislature has ordained that "[W]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Since the statute is clear in its application to the instant case, we need not delve further into the legislative intent. This argument is without merit.

Appellant next argues that the Mandatory Minimum Sentencing Act is unconstitutionally vague under both the Pennsylvania and United States Constitutions as the phrase "in or near public transportation" does not specify whether the Act is to be applied to privately-owned transportation, such as the Yellow Cab Company. This argument is similarly meritless.

 In assessing whether a statute is unconstitutionally vague, we are guided by the following standard:

A law is void on its face if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Fabio v. Civil Ser-*

*vice Commission,* 489 Pa. 309, 414 A.2d 82 (1980). In reviewing a void for vagueness challenge, we must consider both the essential fairness of the law and the impracticability of drafting the legislation with greater specificity. *Id.* Further, we note the strong presumption of constitutionality of an Act of the General Assembly. *American Booksellers Association, Inc. v. Rendell,* 332 Pa.Super. 537, 481 A.2d 919 (1984). Legislation will not be declared unconstitutional unless it clearly, palpably, and plainly violates the constitution and a mere showing of difficulty in determining whether conduct is within the definition will not suffice to meet this heavy burden. *Id.*

*Commonwealth v. Sterling,* 344 Pa.Super. 269, 275–76, 496 A.2d 789, 792 (1985). Instantly, the phrase which appellant alleges is void for vagueness is defined in 42 Pa.C.S. § 9713(b). As we have stated, *supra,* the plain meaning of the words of the statute make clear that it has application to a private cab company. Since persons of "common intelligence" need not "guess" at the statute's meaning, *Commonwealth v. Sterling, supra,* appellant's argument is meritless.

Appellant next argues that the court erred in refusing to give his requested jury charge relating to circumstantial evidence, specifically that "[i]f two or more equal inferences arise from the evidence, the circumstantial evidence cannot be found to have proved guilt beyond a reasonable doubt, and you the jurors cannot select or guess at inferences of guilt."

It is well-settled that a jury charge must be viewed as a whole to assess if it adequately guided the jury in the performance of its fact-finding duty. *Commonwealth v. Rodriguez,* 343 Pa.Super. 486, 495 A.2d 569 (1985). The trial court need not charge the jury pursuant to every request made of it. *Id.* In charging the jury, a trial court's chief duty is to clarify the issues to be resolved; moreover, the law must be accurately and clearly stated. *Commonwealth v. Newman,* 323 Pa.Super. 394, 470 A.2d 976 (1984).

In *Commonwealth v. Suggs*, 289 Pa.Super. 44, 60–61, 432 A.2d 1042, 1050 (1981), we considered and rejected a similar claim:

> Appellants requested the lower court to charge the jury that, if two or more equal inferences arose from circumstantial evidence, they could not select or guess at inferences of guilt. The lower court refused to so charge, and we agree with the Commonwealth that such refusal was reasonable and proper.
>
> . . . .
>
> Herein, the charge to the jury was thorough and comprehensive. The lower court expounded upon the Commonwealth's burden of proof beyond a reasonable doubt more than once in its lengthy charge. With respect to circumstantial evidence, the jury was instructed that all the pieces of evidence, when considered in total must reasonably and naturally lead to the conclusion that the defendants were guilty beyond a reasonable doubt. *See Commonwealth v. Littlejohn*, 433 Pa. 336, 250 A.2d 811 (1969). *Commonwealth v. Turner*, 270 Pa.Super. 58, 410 A.2d 895 (1979). We are more than satisfied that the jury charge was proper in all respects, including this one.

 Instantly, the trial court thoroughly instructed the jury on "reasonable doubt." N.T., 6/3/86, at 9–10. Moreover, the court instructed that all of the circumstantial evidence considered together must convince the jury of appellant's guilt beyond a reasonable doubt. *Id.* at 16. We are satisfied that the court's instruction was not improper or incomplete.

 Appellant also argues that the court erred in instructing the jury that it must first consider whether appellant was guilty of robbery of the first degree, and only if it did not find him guilty of that offense should it consider whether he was guilty of robbery of the second degree. He argues that this instruction violated his constitutional rights and invaded the province of the jury. This argument is meritless.

This aspect of the charge was entirely proper since robbery of the second degree is a lesser included offense of robbery of the first degree. Moreover, the court clearly instructed the jury that to convict on robbery of the first degree, it must find guilt beyond a reasonable doubt. *Id.* at 20, 21. Accordingly, we do not find error in this instruction.

▪ Appellant next argues that he was denied a fair trial due to certain comments made by the prosecutor in his closing argument. The prosecution argued that appellant's defense—that he knew the complaining witness and that he and the complaining witness entered into an agreement whereby appellant would rent the cab from him—was inconsistent with appellant's request for a line-up to determine if the complaining witness could identify him. The prosecutor argued:

Does that make sense, ladies and gentlemen? Does it make sense that the defendant was going to come in here and say I knew him. We made an agreement. It was all between friends. No wonder he can identify me. And then defense would stand there at the preliminary hearing and say I want a lineup. I want to see if he can identify me.

If he knew him, if he had met with him to get that cab, then why request a lineup? Why have that procedure to see if he could be identified, or at that point was it still a smorgasbord, ladies and gentlemen? Was the defendant trying to choose from column A or column B and say let's see—

[DEFENSE COUNSEL]: Objection, your Honor.

THE COURT: What are you objecting to?

[DEFENSE COUNSEL]: First of all, I don't believe it was in evidence, and again the jury's recollection will—

THE COURT: The recollection of the jury counts.

N.T., 6/2/86, at 185. Appellant maintains that the prosecutor was not entitled to comment upon and attribute defense strategy to him. This argument does not entitle appellant to relief.

In assessing appellant's contention, we are mindful that a prosecutor must limit his statements to the facts introduced at trial and the legitimate inferences therefrom. *Commonwealth v. Bricker*, 506 Pa. 571, 487 A.2d 346 (1985) (plurality opinion). Moreover, the Commonwealth is afforded reasonable latitude in fairly presenting its version of the case to the jury. *Commonwealth v. Upchurch*, 355 Pa.Super. 425, 513 A.2d 995 (1986). The Pennsylvania Supreme Court recently reaffirmed that the "unavoidable prejudice test," as articulated in *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975), is to be used in determining the impact of prejudice in closing arguments.

> [W]here the language of the district attorney is intemperate, uncalled for and improper, a new trial is not necessarily required. *Commonwealth v. Crittenton*, 326 Pa. 25, 31, 191 A. 358 (1937); *Commonwealth v. McHugh*, 187 Pa.Super. 568, 577, 145 A.2d 896 (1958). The language must be such that its 'unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict.' *Commonwealth v. Simon*, 432 Pa. 386, 394, 248 A.2d 289, 292 (1968). *See also, Commonwealth v. Meyers*, 290 Pa. 573, 139 A. 374 (1927). The effect of such remarks depends upon the atmosphere of the trial, *Commonwealth v. Dickerson*, 406 Pa. 102, 110, 176 A.2d 421 (1962); *Commonwealth v. Del Giorno*, 303 Pa. 509, 519, 154 A. 786 (1931), and the proper action to be taken is within the discretion of the trial court. *Commonwealth v. Silvis*, 445 Pa. 235, 237, 284 A.2d 740 (1971); *Commonwealth v. Simon, supra.*

*Commonwealth v. Johnson*, 516 Pa. 527, 532–33, 533 A.2d 994, 997 (1987). The *Johnson* court went on to state, "Under this test, we are required to judge whether the mental bias of the jury has been so 'fixed' as to implicate the truth-finding function itself." *Id.*

Instantly, the fact that the defense had requested the line-up was in evidence. N.T., 6/2/86, at 84. We agree

with the trial court that "the Commonwealth's argument that the defendant chose a defense based on [the line-up's] outcome was a fair inference." Trial court opinion at 9. Moreover, we do not find the prosecution's suggestion that appellant had inconsistent trial strategies to have had the unavoidable effect of prejudicing the jury against appellant so that they could not weigh the evidence and render a fair verdict. Accordingly, this contention is meritless.

■ Appellant also argues that the following prosecutor's comments were prejudicial due to the fact that they implied that certain defense questioning was improper and suggested that the court did not believe the defense:

Ladies and gentlemen, counsel said to you how easy is it for somebody to come in and accuse somebody else of a crime. You tell me after watching that cross-examination of Noah Afuwape how easy was it?

Noah Afuwape reported a crime to the police, and he was being cross-examined today like a criminal himself. And counsel kept saying to you, how angry did he get? Well, who else got angry? I got angry of having put a witness on the stand and see him subjected to that.

[DEFENSE COUNSEL]: Objection, your Honor. That's improper, your Honor.

THE COURT: Please. This is only argument. I've told that to the jury and they understand it, I'm sure.

[PROSECUTOR]: Judge Anderson got angry, it appeared. You saw him. And how many times did he sustain objections and tell counsel to get off that line of questioning.

So are you surprised that Noah Afuwape also shared that anger at what was being suggested, what was being thrown at him?

N.T., 6/2/86, at 188–89.

These remarks were in fair response to comments made by defense counsel in her closing argument. Earlier, when defense counsel cross-examined the complaining witness, she attempted to suggest to the jury that the complaining witness had not been robbed but had, in fact, entered into

an agreement with appellant for the latter to take the cab to Chicago in exchange for money. Defense counsel repeatedly questioned the complaint witness as to the existence of such an agreement despite his steadfast denials. This line of questioning concluded as follows:

Q. Isn't it a fact, sir, that you met him several days before this alleged robbery, and that you saw him again approximately a day-and-a-half before this alleged robbery?

A. No.

[PROSECUTOR]: Objection, your Honor. It's been asked and answered. Counsel's now testifying.

THE COURT: He's answered no three times already. That's correct.

BY [DEFENSE COUNSEL:]

Q. Isn't it correct the second time you met him he told you he needed to rent a car to drive to Chicago? Isn't that correct?

[PROSECUTOR]: Objection, your Honor. Counsel's now testifying.

THE WITNESS: Absolutely no.

THE COURT: That's the fourth time he's answered the question. He says he never did. Now, that's his answer.

BY [DEFENSE COUNSEL]:

Q. Mr. Afuwape, isn't it correct that you reached an agreement with my client—let me finish the question, sir—that you reached an agreement with my client to rent him and his friend your car for $300?

A. I can't sublet the cab. It's against the—

Q. Yes or no, sir?

A. No.

Q. Isn't it correct, sir, that you received on October 14, 1985, $150 from my client on the promise that he would give you 150 more when he brought the cab back?

A. No. No.

[PROSECUTOR]: Objection, your Honor. If counsel wants to testify, I would like her to take the stand.

THE COURT: Please, that's five times already. I forbid you to ask anymore question on that particular point. The witness has answered five times no.

BY [DEFENSE COUNSEL]:

Q. Sir, isn't it correct that after you exchanged the car with my client—

A. I didn't exchange the car with your client. I didn't exchange the car with your client. They get the car from me on force.

Q. Sir, isn't it correct that after you exchanged the car with my client, and you got the money from him, sir—

A. I didn't get anything from him.

Q. —you got worried about whether they would bring the cab back?

[PROSECUTOR]: Objection.

THE WITNESS: No.

THE COURT: Just a minute. Stop. Now, we're going to put an end to this right now.

[DEFENSE COUNSEL]: Your Honor, may I see you at sidebar with counsel.

THE COURT: I'm telling you now, any further questions along this line will result in the Court taking action against you.

Do you understand that?

[DEFENSE COUNSEL]: May I see you at sidebar with counsel.

THE COURT: Yes, you may.

N.T., 6/2/86, at 21–25.

In her closing argument to the jury, defense counsel stated:

Ladies and gentlemen of the jury, remember I talked to you about credibility. What is credibility? It's the way Afuwape answered my questions. He got angry at me, ladies and gentlemen, when I asked him questions.

Why did he get angry? Why did he get angry when I asked him simple questions about a nickname? Why did he go back and repeat without my asking him several

times that he didn't go by that name? Was he protesting too much that he is in fact not Bones?

Were there flaws in his story, ladies and gentlemen? Did he in fact reach an agreement, what is called in legal parlance, a bargain for exchange? Did he in fact reach an agreement to give that cab and those keys to my client and Allan Johnson for several days to take a trip to Chicago, and did he in fact receive money from that?

And I submit to you, ladies and gentlemen, that is what this case is about.

N.T., 6/2/86, at 153–54.

The prosecutorial remarks to which appellant objects, *supra*, were made in fair response to the defense counsel's remarks. Our courts have long recognized the principle of "fair response"—that the prosecution may properly respond to defense arguments. *Commonwealth v. Torres*, 329 Pa. Super. 58, 477 A.2d 1350 (1984) (where prosecution's statements reflected adversely on defendant's failure to testify, one of factors cited to support holding of insufficient prejudice to warrant new trial was that comments were response to defense assertion); *Commonwealth v. Kahley*, 467 Pa. 272, 356 A.2d 745 (1977) (defendant's fifth amendment rights not violated where prosecution elicits testimony concerning defendant's post-arrest silence so long as the reference to silence is not designed to infer guilt but is advanced to counter misleading or improper impression created by defense). *See also Commonwealth v. Gwaltney*, 497 Pa. 505, 442 A.2d 236 (1982); *Commonwealth v. Barren*, 501 Pa. 493, 462 A.2d 233 (1983); *Commonwealth v. DeHart*, 512 Pa. 235, 516 A.2d 656 (1986); *Commonwealth v. D'Amato*, 514 Pa. 471, 526 A.2d 300 (1987); *Commonwealth v. Toledo*, 365 Pa.Super. 224, 529 A.2d 480 (1987); *Commonwealth v. Chimenti*, 362 Pa.Super. 350, 524 A.2d 913 (1987).

The prosecutor's comments were advanced to remind the jury that defense counsel had been unable to weaken Afuwape's testimony and that defense counsel's cross-examination was viewed by the trial court—properly, we might

add—as overzealous. We do not find reversible error in the prosecutor's comments.

■ Appellant also argues that the court erred in permitting Trooper Tanner to testify as to a radio call he received from a toll booth collector. Appellant argues that the testimony was hearsay. We do not find error in admitting it. The objected testimony was as follows:

BY [PROSECUTOR]:

Q. Trooper, would you tell the ladies and gentlemen of the jury what your first involvement or how you first got involved with the incident that led to the arrest of Frederick Sanders.

A. I received a radio call from the toll plaza that is situated on the Ohio/Indiana state line. The toll plaza called me and told me that—

[DEFENSE COUNSEL]: Objection, your Honor.

THE COURT: Objection overruled.

Members of the jury, what the witness is saying at this time is something that he hasn't observed or of his knowledge.

The only purpose of this testimony and permitting the testimony is to explain the officer's actions. You are not to consider this as evidence against the defendant.

Please proceed.

THE WITNESS: I received a radio call from the toll plaza that is situated on the Ohio–Indiana state line. The toll collection person called me, told me that there was a taxi cab that had come down to the state line, and they did not or could not pay their toll.

. . . .

As I was responding to the call, I received a second call from the toll collection—toll booth personnel. They advised me that the taxi cab was stopped on the turnpike just approximately a half mile east of the toll booth. N.T., 5/30/86, at 44–45.

It is well-settled that an out-of-court statement offered to explain police conduct is not hearsay. *Commonwealth v.*

*Underwood*, 347 Pa.Super. 256, 500 A.2d 820 (1985). In an exhaustive discussion of this point, *Underwood* held that in assessing the propriety of admitting testimony similar to that challenged instantly, the trial court must weigh the prejudice to the defendant against the need for the challenged testimony. Instantly, the testimony was important to explain why the officer reacted as he did. We fail to see any material prejudice to appellant in permitting the jury to hear that he and his companion were either unable to unwilling to pay a toll, and therefore abandoned the cab. This information was peripheral to any matter at issue and served only to explain the officer's actions. Accordingly, this argument does not merit relief.

■■■ Appellant next argues that the court erred in permitting the prosecutor to question the complaining witness about his testimony at a preliminary hearing.

This line of questioning was proper for the following reasons. On cross-examination, the defense asked the complaining witness about the complaint he filed with the police shortly after the incident. Defense counsel sought to show that in the complaint, he identified appellant as the man who put the sharp object up to his throat, whereas at trial, he identified *appellant's companion* as the one who wielded the knife. Appellant argued that the police officer who recorded the information in the complaint copied it erroneously. Thus, we may infer that Afuwape intended to tell the police that appellant's companion put the sharp object to his throat. The prosecutor's line of questioning, to which appellant objects, was designed to rebut the defendant's claim of recent fabrication by showing that the complaining witness' testimony at the preliminary hearing was consistent with his testimony at trial.

"It is well-established that a trial court may, in its discretion, permit introduction of a prior consistent statement of a witness in order to rebut a claim of recent fabrication in the witness' trial testimony." *Commonwealth v. Cruz*, 489 Pa. 559, 566, 414 A.2d 1032, 1036 (1980). *See also Commonwealth v. Berrios*, 495 Pa. 444, 434 A.2d 1173 (1981). "In

order for the prior statement to be admissible, it must have been made before its effect on the case could have been foreseen...." L. Packel & A. Poulin, *Pennsylvania Evidence* § 801.6.

Instantly, we find no abuse of discretion in admitting the testimony. The prosecution's introduction of Afuwape's testimony from the preliminary hearing was designed to rebut the defense's claim of recent fabrication. Moreover, the statement was made before its effect on the case could have been foreseen since Afuwape did not realize at the time he made it that it would be construed as contradicting his earlier statement.

■ Appellant also claims that the court erred in not allowing the defense to recross-examine the complainant about his testimony at the preliminary hearing.

This assertion is also meritless. The defense was accorded an opportunity to cross-examine the witness concerning his testimony at the preliminary hearing. N.T., 6/2/86, at 55–57. The only matter to which the defense was not permitted to question Afuwape concerned a point about which Afuwape had already testified. We do not find an abuse of discretion in the court's refusal to allow this questioning.

■ Appellant next argues that the court erred in not allowing defense counsel to recall a defense witness, Alan Johnson, for follow-up questions concerning matters which the prosecution had raised on cross-examination. Allan Johnson, appellant's companion in the incident, testified for the defense that he and appellant had rented the cab from Afuwape in order to drive it to Chicago. On cross-examination, the prosecution asked Johnson when he had first approached defense counsel with the information that he and appellant had rented the cab. Johnson stated that he first approached her the day before he testified. N.T., 6/2/86, at 123. Appellant argues that defense counsel was improperly denied the opportunity to follow up on the issue

of "recent fabrication" raised by the prosecution. This contention does not merit relief.

Defense counsel was, in fact, accorded the opportunity to question Mr. Johnson concerning the matter raised on cross-examination:

[DEFENSE COUNSEL]:

Q. Mr. Johnson, in response to the District Attorney's question that you talked to me yesterday as the first time, was that because it was the first time or you were confused about the question?

A. I was confused about the question. I spoke to her before but it wasn't clarified whether or not I could actually testify.

Q. Until when—

A. Until—

Q. —did I make that decision?

A. Until yesterday.

N.T., 6/2/86, at 129–30. Defense counsel thanked the witness and excused him. She then called a detective to the stand but decided she first would like to follow-up on her last question to Mr. Johnson. The court denied this request.

We cannot fathom how any further follow-up might have aided appellant, nor does appellant elucidate this for us. Accordingly, we do not find an abuse of discretion in the court's ruling.

■■■ Appellant also argues that the trial court erred in "berating" defense counsel during her cross-examination of the complainant, thereby expressing his opinion as to appellant's guilt. Specifically, the trial court stated:

"I'm telling you now, any further questions along this line will result in the court taking action against you."

N.T., 6/2/86, at 25. Appellant states: "The Judge's remark was delivered in such a threatening manner that the jury could not have assumed anything other than the court did not believe the substance of the testimony." Appellant's brief at 26. This argument is meritless.

The court made the comment only after defense counsel had repeatedly asked the complaining witness whether he had entered into an agreement with appellant for the latter to rent the cab. The complaining witness clearly answered in the negative. The court warned defense counsel three times before making the comment of which appellant complains. Not only does the comment not mandate a reversal, we believe that the trial court exercised considerable restraint in light of defense counsel's conduct.

■■■ Finally, appellant argues that the court erred in not permitting defense counsel to elicit testimony from a defense witness, Allan Johnson, which would have shown that appellant entered into an agreement with the complaining witness to rent the latter's cab. Appellant argues that this testimony was not hearsay since it did not go to the truth of the matter asserted but rather was offered for the limited purpose of showing the witness' state of mind. This argument is meritless.

The witness' state of mind was not a material consideration in the instant case. The testimony which the court refused to admit would have gone to the truth of the matter asserted. Therefore, it was not admissible.

JUDGMENT OF SENTENCE AFFIRMED.