J-S11025-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA STOKES | : | |
| | : | |
| Appellant | : | No. 402 EDA 2022 |

Appeal from the PCRA Order Entered December 20, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008090-2010

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:              **FILED JUNE 14, 2023**

Joshua Stokes appeals from the order denying his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. He argues the court failed to answer the questions posed by this Court when we remanded the matter and erred in denying his ineffectiveness claim. We affirm.

Stokes was arrested and charged in May 2010 after the victim, Philip Riddick, was shot at as he drove away in a vehicle. At Stokes' July 2020 jury trial, Riddick testified that he confronted his neighbor, Nia Shaw, about empty beer bottles and trash left on the steps of his residence. N.T., July 12, 2012, at 87-88. Stokes was present when Riddick and Shaw spoke. *Id.* at 88. Shortly after Riddick entered his residence, he heard several cars pulling up outside.

*Id.* at 90-92. He instructed his girlfriend, Markieda Taylor, and her children to gather their belongings and leave. *Id.* at 97.[1]

Riddick testified that he walked outside to his car, where he saw 13 young men gathered nearby. *Id.* at 98. He stated he observed Stokes walk to the corner and look around, before another man, Malik Reed, handed Stokes a firearm taken from the trunk of a vehicle. *Id.* at 100-01, 103. Riddick testified that Reed and Stokes had guns, and he saw Stokes fire a gun at him. *Id.* at 101-08. Riddick said that when the shooting started, he drove in reverse to avoid being shot. *Id.* at 107-09. He stated that Stokes, Reed, and the other men fled the scene. *Id.* at 113.

Taylor testified that when she heard gunshots, she looked out her door and saw Reed fire two shots and then run down the street. *Id.* at 33-34. She saw Stokes running with everyone else. *Id.* at 37. She knew Stokes because she saw him "[a]ll the time" in front of her neighbor's house. *Id.* at 25. Taylor further testified that approximately one week after the incident, Stokes approached her as she sat outside of her home and told her, "[Y]ou better not go to court" or "something will happen." *Id.* at 49–50.

Detective Michael O'Neill testified that the police found eight shell casings and one bullet at the scene. N.T., July 17, 2012, at 71. They also recovered two firearms from Reed's car trunk—a semiautomatic pistol and a

---

[1] Riddick also called his mother, sister, and brother. N.T., July 12, 2012, at 90, 93. They came to the house, and his sister and Taylor got into an argument. Riddick's family left before the shooting. *See, e.g., id.* at 97.

revolver. *Id.* at 103, 16. Police Officer Ronald Weitman explained that semiautomatic pistols eject fired casings, but revolvers do not. *Id.* at 35-36. He further testified that the firearms recovered from the trunk of Reed's car were not used during the incident. *Id.* at 37-38.

Nia Shaw testified for the defense. She testified that after she heard the gunshots, she went to the door and saw Riddick reversing down the street. N.T., July 18, 2012, at 34-35. She did not see who was shooting but told Stokes she would testify in his defense because Stokes "left before any of this occurred." *Id.* at 47. She did not speak with the police officers that night or any time before being listed as a witness for the defense. *Id.* at 36, 41.

Another person who resided on the block, Renee Williams, also testified for the defense. Williams testified that before the gunshots, Riddick "kept roaring his car, he would go up, then he would come back, he would go up and come back." *Id.* at 60-61. When Williams saw the person by the white car lift his shirt to go in his pocket, she "went to the back of [her] kitchen" and then heard gunshots. *Id.* at 61. She testified that Stokes was not there. *Id.* Williams did not speak to the police following the shooting. Before trial, she spoke with a detective, but did not mention that Riddick had "roared" his car or that she had seen Reed reach into his pocket. *Id.* at 70-73.

The Commonwealth also admitted into evidence transcripts of prison phone calls that Stokes had participated in. During closing, defense counsel argued the phone calls proved Stokes did not know about the shooting:

Now, if you recall, the recorded phone calls that were played by the Commonwealth in reference to Mr. Stokes and whoever he made phone calls to, he did not know what he was in jail for, [ex]cept, if you recall, he said that this girl said that I threatened her. Nothing about any kind of shooting. He didn't even have that in his mind because he didn't do any shooting.

N.T., July 19, 2012, at 50.

During its closing, the Commonwealth argued:

[T]he defense is asking you to not convict the defendant because when he was arrested, he's telling his friends he doesn't know what he's in for. Well, what else is he doing? What else has he been doing? So he's not sure what he's been arrested for this time. I don't know. I don't know what these charges are. What does that tell you about the defendant if he's unsure?

*Id.* at 68.

A jury convicted Stokes of criminal conspiracy, aggravated assault, persons not to possess firearms, firearms not to be carried without a license, and possessing instruments of crime.[2] The trial court sentenced Stokes to an aggregate term of 25 to 50 years' incarceration.[3] Stokes did not file post-sentence motions. On direct appeal, this Court affirmed, and, in May 2017, the Pennsylvania Supreme Court denied allowance of appeal.

_____

[2] 18 Pa.C.S.A. §§ 903(a)(1), 2702(a), 6105(a)(1), 6106(a)(1), and 907(a), respectively.

[3] At a separate docket, the jury also found Stokes guilty of intimidation of a witness, 18 Pa.C.S.A. § 4952(a)(1), and the court sentenced Stokes to 10 to 20 years' incarceration at that docket. That docket is not before us in this appeal.

In February 2018, Stokes filed this timely, *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended petition. Among other things, Stokes argued that trial counsel was ineffective for failing to object to the Commonwealth's comments in closing argument about the prison calls. The PCRA court dismissed Stokes' PCRA petition without a hearing, and we remanded for an evidentiary hearing. **Commonwealth v. Stokes**, 1240 EDA 2019, 2021 WL 4810413, at *4 (Pa.Super. filed Oct. 15, 2021) (unpublished memorandum). We concluded that we could not determine whether the record supported the PCRA court's conclusion that the underlying claim lacked arguable merit because the transcripts of the calls were not in the certified record. **Id.** Further, the PCRA court had concluded that the comments were a fair response to Stokes' closing argument, but it did not reference the portion of Stokes' closing argument that it concluded prompted the response, or offer any analysis. **Id.** We noted that we "ma[d]e no determination as to whether [Stokes] is ultimately entitled to relief on his claim that counsel was ineffective for failing to object to statements in the Commonwealth's closing argument concerning [Stokes'] knowledge of why he was arrested." **Id.** We concluded Stokes had set forth facts to support the need for an evidentiary hearing and remanded for a hearing. **Id.**

At the hearing on remand, the Commonwealth admitted the transcripts into evidence. N.T., December 20, 2021, at 8. It also clarified that during the closing, the assistant district attorney was responding to the statement made during Stokes' closing argument wherein counsel claimed that Stokes did not

- 5 -

know why he was in jail or about the shooting. The court again denied the PCRA petition,[4] and Stokes filed this appeal.

Stokes raises the following issue:

> Did the PCRA Court err by denying [Stokes'] timely Amended PCRA Petition without following this Court's instructions to clarify a factual issue that was key to ascertaining whether trial counsel was ineffective?

Stokes' Br. at 2.

Stokes argues the PCRA court erred because it "failed to address the issues posed by this Court and made no other attempt to explain its reasoning." Stokes' Br. at 8. He contends that the court "fell woefully short of satisfying this Court's mandate," as it "made no attempt to specify what justified the prosecutor's remark or why the remark was not prejudicial." *Id.* at 12. However, Stokes argues that another remand is not needed, but rather we should decide the issue on the existing record.

Stokes maintains the underlying claim has merit because the prosecutor's statements conveyed to the jury that Stokes had committed unrelated criminal conduct and had a history of criminal conduct. Stokes argues that the following statements were improper: "Well, what else is he doing? What else has he been doing? So he's not sure what he's been arrested for this time. I don't know. I don't know what the charges are. What does that tell you about the defendant if he's unsure?" *Id.* at 11 (quoting N.T., July 19,

---

[4] The trial judge retired shortly after the hearing and did not issue a Rule 1925(a) opinion. *See* Pa.R.A.P. 1925(a).

2012, at 68). He argues there was "no justifiable reason for the prosecutor to have asked the jury to infer that [Stokes] committed prior crimes," and trial counsel had no reasonable basis for failing to object. *Id.* at 8.

Stokes argues the statements were improper because they were not based on evidence from the trial, as there was no evidence Stokes had committed other crimes. Further, he notes evidence of prior crimes is inadmissible and contends the assistant district attorney should not have attempted to introduce it through the closing argument, where the attorney conveyed to the jury that Stokes was a criminal before the instant trial. He claims the comment prejudiced the jury by "cementing in their minds the notion that [Stokes] was a career criminal who was thus guilty of the instant charges because of his bad character." *Id.* at 17. Stokes claims he presented a reasonable doubt defense at the trial, arguing one witness claimed there was only one shooter and did not tell the police that Stokes was a shooter and the claim that Stokes shot the victim due to an ongoing dispute was refuted by evidence the victim was the aggressor against another person, who acted in self-defense. He likens this case to *Commonwealth v. Johnson*, 533 A.2d 994 (Pa. 1986).

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." *Commonwealth v. Beatty*, 207 A.3d 957, 960-61 (Pa.Super. 2019).

A petitioner who raises a claim of ineffective assistance of counsel must overcome the presumption that counsel is effective. *See Commonwealth v. Mason*, 130 A.3d 601, 618 (Pa. 2015). To do so, the petitioner must plead and prove the following: "(1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner." *Id.* "To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different." *Id.* "Failure to establish any prong of the *Strickland/Pierce* test will defeat an ineffectiveness claim." *Id.* (citing *Commonwealth v. Walker*, 36 A.3d 1, 7 (Pa. 2011)).

Here, we conclude Stokes' claim lacks merit. Although the trial court did not state its reasons on the record or issue a Rule 1925(a) opinion, it heard evidence and argument after remand, where the Commonwealth identified the part of Stokes' counsel's closing argument to which the assistant district attorney was responding and admitted the phone calls into the PCRA record. The Commonwealth therefore clarified the material that provided the basis of the trial court's opinion that the claim lacked merit.

Further, we do not base our decision on the determination that the underlying claim lacked arguable merit. Rather, we conclude Stokes' ineffectiveness claim fails because he failed to establish prejudice. It is not reasonably likely that the prosecutor's comment altered the outcome of the

trial. The Commonwealth presented overwhelming evidence that Stokes shot at the car driven by the victim, including the eyewitness testimony of Riddick and Taylor, both of whom knew Stokes, and the defense witnesses both testified that they did not see the shooting.[5]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/14/2023

---

[5] This Court may affirm a PCRA court's decision on any legal basis. **Commonwealth v. Parker**, 249 A.3d 590, 595 (Pa.Super. 2021).