688 A.2d 1191

**COMMONWEALTH of Pennsylvania**

**v.**

**Demetrius CULL, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1996.

Filed Jan. 14, 1997.

470

Jules Epstein, Philadelphia, for appellant.

Karen A. Brancheau, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CIRILLO, P.J.E., and DEL SOLE and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

Appellant, Demetrius Cull, appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County on December 21, 1995. We affirm.

The trial court adequately summarized the facts of this case as follows:

[Appellant] and his co-conspirator, Anthony Smith[,] were [arrested and charged with] killing Sharon Smith in [their] West Philadelphia crack house after she threatened to disclose their drug trafficking [activities] to the police.

The co-conspirator Anthony Smith, a/k/a Daheem, operated a cocaine supply house at 248 North Wanamaker Street in Philadelphia. [Appellant] was one of Smith's drug sellers. Fitzroy Lewis, a/k/a Shorty, supplied [appellant] and Smith with contraband and was familiar with their drug operation.

On the day of the murder, September 10, 1988, Deborah Coleman, who lived in the adjoining rowhouse at 250 North Wanamaker Street, was awakened by a loud argument occurring in the conspirators' crack house at approximately 8:10 a.m. Coleman heard sounds of a physical struggle between the first and second floors and at least two male voices. She then heard a woman scream, "help me, help me, please." After the woman's cries for help, all sounds of struggle "stopped real quick." Twenty minutes after the argument, at 8:30 a.m., another neighbor, Carla Hall, saw both [appellant] and Smith leave their drug house.

Immediately thereafter, [appellant] and Smith went to the home of Faye Cherry, Smith's former girlfriend. Smith advised Ms. Cherry that if anyone "came around looking" for him, she should say she did not even know Smith. When Ms. Cherry expressed curiosity about these instruction [sic], Smith replied, "we just shot this fiend in the head and left her in the basement." When Cherry asked why they had done so, Smith further explained, "because we wouldn't give her no drugs and she threatened to call the cops." At that point, [appellant] interjected, "I shot the

bitch because she scratched me in my face." Ms. Cherry observed scratches on [appellant's] face. Before departing, co-conspirator, Smith verified that Ms. Cherry had no photographs of him and requested her telephone number so that he could keep informed as to "what's going on down here."

Less than an hour after the murder, at approximately 9:00 a.m., on September 10, 1988, Smith called his drug supplier Fitzroy Lewis to advise him that he and [appellant] were going to close the crack house and leave town. To explain this sudden move, Smith informed Lewis that he "had just killed a girl" at the crack house because "she was giving some problem." Smith further explained that he and [appellant] had dragged her down to the basement and beaten her, that [appellant] had shot her at Smith's direction, and that, after cleaning up the blood, the two had packed their belongings, and left the house. Following his description of the murder, Smith then asked Lewis to recommend a hotel where Smith and [appellant] could stay until nightfall, when they could safely travel.

On September 13, 1988, police found the victim's body in a pool of blood in the basement of the crack house at 248 North Wanamaker Street. The police investigation disclosed signs of a struggle on the first floor, and several spent cartridges were found on a living room shelf that were consistent with the bullet that killed the victim.

Following a post-mortem examination, the medical examiner determined that the victim had been killed by a single gunshot wound to the left side of the head.

Two weeks before the murder, co-defendant Smith had told Fitzroy Lewis that he, Smith had just purchased a .32 caliber gun. Several hours before the murder, Faye Cherry had observed [appellant] shooting a gun in the air on North Wanamaker Street.

Police immediately began a manhunt for both [appellant] and Anthony Smith. After searching for Smith in New York, where both Faye Cherry and Fitzroy Lewis believed he had fled, police finally found him in a North Carolina jail

on December 13, 1988, and he was extradited to Philadelphia. At the time of his arrest, Smith gave a statement to the police, placing himself at the scene of the crime but implicating only [appellant] in the murder.

\* \* \* \* \* \*

Police did not apprehend [appellant] until January 26, 1989, when he was discovered hiding in the closet of a house in Columbia, South Carolina.

Trial court opinion, 2/15/96 at 1–4. Following a joint trial, appellant was convicted of first-degree murder,[1] conspiracy,[2] and possessing an instrument of crime.[3] In September of 1990, Jules Epstein, Esquire replaced the trial attorney as counsel for appellant and submitted post-verdict motions. After two hearings, the trial judge granted appellant a new trial finding that certain statements made by Smith had been erroneously admitted at trial. On appeal, we reversed the trial court's grant of a new trial and the Supreme Court of Pennsylvania subsequently granted *allocatur* and affirmed our decision. *Commonwealth v. Cull,* 418 Pa.Super. 23, 613 A.2d 12 (1992), *aff'd,* 540 Pa. 161, 656 A.2d 476 (1995). Upon remand, the trial court considered and denied the remaining post-verdict motions. Appellant was then sentenced to life imprisonment prompting the instant appeal.

In this appeal, appellant first challenges the stewardship of trial counsel. To prove ineffective assistance of counsel, appellant must show that his assertion is one of arguable merit, that trial counsel had no reasonable basis for his action, and that counsel's action resulted in prejudice. *Commonwealth v. Cancilla,* 437 Pa.Super. 317, 323–24, 649 A.2d 991, 994 (1994).

Appellant initially alleges ineffective assistance of trial counsel for failing to object to various remarks made by the prosecutor during closing argument. To succeed on this claim, appellant must show that a closing remark by the

1. 18 Pa.C.S.A. § 2502(a).

2. 18 Pa.C.S.A. § 903.

3. 18 Pa.C.S.A. § 907.

prosecutor was, in fact, improper. *Commonwealth v. Johnson*, 516 Pa. 527, 533 A.2d 994 (1987). Appellant must also demonstrate that the "unavoidable effect" of an improper closing remark was "to prejudice the jury, forming in their minds a fixed bias and hostility toward appellant, so that they could not weigh the evidence objectively and render a true verdict." *Id.* (citation omitted).

■ First, appellant challenges the propriety of the following comments made by the prosecutor during closing argument:

[L]adies and gentlemen, it's not about not being scared . . ., because if you're not scared, if you're not deathly afraid of crack/cocaine and how it ravages its victims, if you're not afraid of crack houses in otherwise decent neighborhoods with decent people like Mrs. Deborah Coleman trying to raise three little girls, if you're not afraid of the proprietors, the businessmen, the franchises as [defense counsel] likes to call them like Demetrius Cull and Anthony Smith, if you're not afraid of them running and terrorizing the neighborhood in which their crack houses are situated—

\* \* \* \* \* \*

If you're not afraid of guns, if you're not afraid of people like Demetrius Cull and Anthony Smith who, according to the testimony and the evidence, owned and possessed and carry loaded guns into the house and in the neighborhood, carrying them shooting them off in the middle of the night in the air like it's the wild, wild west—

\* \* \* \* \* \*

Drug dealers govern the neighborhood on their terms. They govern the block by fear, intimidation and on their terms. Not by having a sometime user tell them what to do.

\* \* \* \* \* \*

Ladies and gentlemen, when I was growing up, I had three heros. . . . [M]y third hero, and he was really my first, was a senator from New York and his name was

Bobby Kennedy and he used to say that if you're not part of the solution, you're part of the problem and the problem, ladies and gentlemen, is Mrs. Etta Smith will never see her only daughter, her only child again and the problem is 248 [N]orth Wanamaker Street and the problem is the defendants who would run 248 [N]orth Wanamaker Street and put bullets into the head of a young girl. Those are the problems.

Give us a solution.

N.T., 10/30/89 at 657–658, 659, 663, 697–698.

Citing *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221 (1995), appellant argues solely that this pattern of closing argument made the trial a plebiscite on drug-related crime rather than an adjudication on the merits of the Commonwealth's case. We disagree.

*LaCava* presented circumstances significantly different from those now before us and is, therefore, readily distinguishable. Unlike the case *sub judice, LaCava* concerned the penalty phase of a death sentence case. The Supreme Court remanded for a new penalty hearing due to the prosecutor's remarks, the "essence" of which "was to convince the jury to sentence appellant to death as a form of retribution for the ills inflicted on society by those who sell drugs." *LaCava*, 542 Pa. at 193, 666 A.2d at 237. The Court noted that the prosecutor "attempted to expand the jury's focus from the punishment of appellant on the basis of one aggravating circumstance (*i.e.,* that [he] killed a police officer acting in the line of duty), to punishment of appellant on the basis of society's victimization at the hands of drug dealers." *Id.* The prosecutor accomplished this expansion of focus by suggesting that the jury sentence appellant to death because "he was a drug dealer rather than because he was a brutal killer of a police officer. . . ." *Id.* Due to the unique circumstances of the case, *i.e.,* that these comments occurred in a case where "the jury found two mitigating circumstances and only one aggravating circumstance", the Court found that "[t]he prosecutor's comments were such that they could have impermissibly shifted the balance in favor of a death sentence." *Id.* As a result of

the factual differences in *LaCava* and the present case, we find that *LaCava* does not establish that an impermissible shifting occurred instantly.

The excerpts appellant has chosen to challenge are not fully representative of the nature of the Commonwealth's closing argument. Rather than urging the jury to convict appellant of murder because he was a drug dealer, the prosecutor argued in favor of appellant's guilt because he "put bullets into the head of a young girl." N.T., 10/30/89 at 698. Additionally, throughout the closing argument, the prosecutor emphasized that the trial was a search for the truth and that "locking up the wrong guys may not go to do anybody any good." *Id.* at 663. *See also id.* at 657.

In *LaCava*, the trial court did not give any curative instructions. Presently, however, our review of the notes of testimony reveals that appellant objected twice to the challenged remarks and the court provided the jury with the following cautionary instructions in response thereto:

> THE COURT: Ladies and Gentlemen, first of all there's no reason for you to be afraid of anything in terms of your job here. Second of all, if you were concerned about these matters about crack and cocaine, you share a concern with almost everyone in this city because I will tell you now and as I will repeat later those concerns, the mere concern about crack and about crack cocaine houses is not an issue before this jury. The issue before this jury is whether the Commonwealth has proven beyond a reasonable doubt these murder and related charges. Some of that has to do with the operation of a crack house and how this murder may or may not have come to occur but concern that everyone would share about the operation of crack houses itself cannot prove anyone guilty of a murder.

N.T., 10/30/89 at 659. Later, in the charge to the jury, the court stated:

> Ladies and gentlemen, as I reviewed briefly with you previously, these defendants, Mr. Cull and Mr. Smith, are on trial for homicide, conspiracy and weapons offenses. They

are not on trial here for drug offenses. You have heard evidence about drug matters at this trial because such evidence was necessary to establish the context in which the Commonwealth alleges this homicide occurred and to that extent and for that purpose you may consider the evidence concerning drug involvement; however, evidence about drug involvement can be no substitute for proof of a homicide. You may not find either or both defendants guilty of the charges on trial here simply because you are convinced that they were involved in an unlawful drug business. You may only find the defendants guilty if you're convinced beyond a reasonable doubt that each defendant has been proven guilty of the charges brought here. So, in essence what I am saying, while the evidence concerning the drugs may have some relevance, it must not prejudice you against these defendants so that you will convict them of these homicide and related charges without being convinced of their guilt on these charges beyond a reasonable doubt.

*Id.* at 735. We find that these instructions cured any conceivable prejudice that appellant may have suffered as a result of the challenged remarks. Appellant's first claim is, therefore, meritless.

Appellant also challenges the following comments made by the prosecutor:

In deciding this case, if you don't think about it, if you're not thinking about people like Anthony Smith and Demetrius Cull who seem to be, based on the evidence, fond of putting guns up to women's heads. . . .

N.T., 10/30/89 at 661. As to this comment, appellant argues:

The only evidence in the record of any person putting a gun to a woman's head was evidence regarding Smith, and not appellant; and Smith had done it to one woman, Faye Cherry. No objection was made to this remark, which was clearly without record support and therefore impermissible.

Appellant's brief at 17. We find appellant's claim to be belied by the record. Faye Cherry testified not only that co-defendant Smith had once put a gun to her head, but also that

appellant had admitted to her that he himself had shot the victim in the head. *See* N.T., 10/26/86 at 272, 295.

Next, appellant challenges the stewardship of trial counsel for failing to interview potential witnesses and present evidence of his good character. Appellant also contends that trial counsel compounded this error when he elicited evidence of unrelated drug activity imputed to the accused.

"Prejudice . . . has been defined to mean that Appellant must establish that but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different." *Commonwealth v. Crawley,* 541 Pa. 408, 414, 663 A.2d 676, 679 (1995). *See also Commonwealth v. Jermyn,* 533 Pa. 194, 198, 620 A.2d 1128, 1130 (1993) (in order to establish prejudice, appellant must demonstrate that counsel's improper course of conduct "had an adverse effect upon the outcome of the proceedings."); *Commonwealth v. Anthony,* 376 Pa.Super. 623, 627–29, 546 A.2d 1122, 1125 (1988) ("[T]o prove that counsel's ineffectiveness resulted in prejudice, an appellant must show that the error was 'so serious as to deprive [him or her] of a fair trial, a trial whose result was reliable.'") (Citations omitted). In an effort to establish prejudice, appellant claims that the "entirety of the Commonwealth's case was an attack on his character." Appellant's brief at 18. He argues that, as a result, evidence of his good character was itself sufficient to establish a reasonable doubt as to his guilt of the crimes with which he was charged.

We find that appellant has failed to establish the requisite degree of prejudice. The evidence introduced against appellant at trial, other than that which challenged his character, was substantial in establishing his guilt of the crimes charged. This evidence consisted largely of the testimony of Faye Cherry. Ms. Cherry testified not only to co-conspirator Anthony Smith's statements implicating himself and appellant in the criminal act, but also to appellant's own statement that he shot the victim because she scratched him. Ms. Cherry also testified to observing the scratches to which appellant was referring as well as having seen appellant firing a gun several hours before the murder. Consistent with Ms. Cherry's testi-

mony was the testimony of Deborah Coleman and Carla Hall. This testimony placed appellant at 248 North Wanamaker Street at the time of the crime. Accordingly, we find that appellant has not established with reasonable probability that the introduction of evidence of his good character would have caused the outcome of the trial to be different. *Crawley, supra; Jermyn, supra; Anthony, supra.*

■ Appellant's final allegation of ineffectiveness challenges counsel's failure to seek severance of his trial from that of his co-defendant.[4] In support thereof, appellant argues that the co-defendants each presented evidence seeking to implicate the other alone in the crime.

■ A motion for severance is addressed to the sound discretion of the trial court, and its decision will not be disturbed absent a manifest abuse of discretion. *Commonwealth v. Jones,* 530 Pa. 591, 601–03, 610 A.2d 931, 936 (1992). It is well-settled that joint trials are preferred where conspiracy is charged. *Commonwealth v. Patterson,* 519 Pa. 190, 546 A.2d 596 (1988). "The mere fact that there is hostility between defendants, or that one may try to save himself at the expense of another, is in itself not sufficient grounds to require separate trials." *Commonwealth v. Chester,* 526 Pa. 578, 590–91, 587 A.2d 1367, 1373, *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). Appellant has not established that the defenses offered by Smith and himself were antagonistic such as to warrant the granting of a motion to sever.[5] *Commonwealth v. Bennie,* 352 Pa.Super. 558, 566–67, 508 A.2d 1211, 1215 (1986) (to require severance, the defenses presented must be "irreconcilable and exclusive" and "conflict at the core"). While we find that the defenses may not have been completely consistent, "the fact that defendants have conflicting versions of what took place, or the extents to

---

4. Although appellant raises this claim in terms of ineffective assistance of counsel, our review of the record indicates that trial counsel did indeed seek to sever the trials. N.T., 10/24/89 at 14. Accordingly, we will review appellant's claim as one of trial court error in refusing to grant such request.

5. We note that neither of the two co-defendants testified in this case.

which they participated ..., is a reason for rather than against a joint trial because the truth may be more easily determined if all are tried together." *Chester*, 526 Pa. at 590, 587 A.2d at 1373.

■ Finally, appellant requests a new trial on the grounds that after-discovered evidence establishes that Faye Cherry testified falsely when she stated that she and co-defendant Smith had ended their relationship several months before the murder. Based thereon, appellant argues that such purported after-discovered evidence also establishes that her testimony implicating him was fabricated.

■ In order to be entitled to a new trial on the basis of after-discovered evidence, appellant is required to establish that the evidence in question is not cumulative, would not be used solely to impeach, and is such as would have compelled a different result at trial. *Commonwealth v. Stocker*, 424 Pa.Super. 189, 622 A.2d 333 (1993). Unless the trial court has clearly abused its discretion in denying a new trial on the basis of after-discovered evidence, its order will not be disturbed on appeal. *Id.*

At trial, defense counsel argued that Ms. Cherry should not be believed and characterized her as Smith's girlfriend, notwithstanding her testimony that the two had ended their relationship before trial. Defense counsel also commented on the inconsistency in her testimony inasmuch as it implicated Smith. N.T., 10/30/89 at 622, 629. Since the alleged after-discovered evidence would, at most, have impeached Ms. Cherry as to the status of her relationship and been cumulative of other evidence regarding such, a different result would not have been compelled by the admission of such and thus a new trial is not warranted. *Stocker, supra.*

Judgment of sentence affirmed.