J-S04025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DEREK ALAN WELLER, | |
| Appellant | No. 1026 MDA 2014 |

Appeal from the PCRA Order entered May 14, 2014,
in the Court of Common Pleas of Perry County,
Criminal Division, at No(s): CP-50-CR-0000236-2010

BEFORE:  BOWES, ALLEN, and STRASSBURGER*, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED FEBRUARY 09, 2015**

Derek Alan Weller ("Appellant") appeals from the order denying his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. sections 9541-46.  We affirm.

The PCRA court summarized the pertinent facts as follows:

> Justin Wilson ("Victim") testified that he and his girlfriend, Ashley Dodson, visited the White Oaks tavern on the night in question.  Ms. Dodson had attended school with [Appellant] and spoke with him at the Tavern. [Appellant] told Ms. Dodson that his half-brother, Co-Defendant, [Jesse Jay Briner,] was at the Pandemonium bar.   Later, Victim and Ms. Dodson visited the Pandemonium bar.   Ms. Dodson saw [Briner] at the Pandemonium and gave him a hug as they were "catching up."  Ms. Dodson stated that [Briner] asked her to come with him and [Appellant], but she declined and indicated that she was leaving with Victim.  She returned to her seat with Victim until the bar was closing.

*Retired Senior Judge assigned to the Superior Court.

Before leaving, Ms. Dodson introduced Victim to [Appellant] and [Briner], after which she left with Victim. After leaving, Ms. Dodson and Victim noticed a [car] following them, which the driver parked on the road near Victim's driveway. A few minutes later, [Appellant] and [Briner] drove down the driveway and parked behind Ms. Dodson's vehicle. They approached Victim while he was outside the vehicle, but Ms. Dodson was still inside. They asked that she "come hang out with them," but she declined. They then told Victim that the property was not his, but Victim indicated that he had recently purchased it. Victim then asked [Appellant] and [Briner] to leave.

Victim testified that he asked the men to leave two or three times, after which [Briner] head-butted him in the nose. As a result, he dipped down and one of the men uppercut him. Then "both of them laid into [him]," each delivering five to six blows to Victim's face. Ms. Dodson testified to the same set of facts, specifically stating that she saw "both [men] kind of hitting at – punching at his face."

Victim stated that he was unable to stop the bleeding from above his eye and sought medical attention early the next evening. He received eight to ten stitches and underwent X-rays and CAT scans. He also testified that his nose and both eye sockets were broken. [According to Victim,] "[i]t was a good month until all the redness and everything was out and the blood was out of [his] eyes." Victim also testified "I had a seizure two weeks afterwards. They don't know if – I never had a seizure before the EEGs. They don't know. I was going back to work. I had it on the job when I was working. I never had one in my life. They don't know for sure, but they gave me more CAT scans and everything. . .My nose I couldn't blow for two weeks. I mean it was broke. They said not to blow it and I didn't because it hurt. If I sneezed, I had a headache for about a week."

PCRA Court Opinion, 5/14/14, 1-2 (citations omitted).

At the conclusion of a joint trial on September 30, 2010, a jury convicted Appellant of both aggravated and simple assault. On November

11, 2010, the trial court sentenced Appellant to an aggregate term of six to twelve years of imprisonment. Appellant filed a timely appeal to this Court, in which he challenged the sufficiency of the evidence supporting his aggravated assault conviction. In an unpublished memorandum filed on July 18, 2011, we rejected Appellant's sufficiency claim and affirmed his judgment of sentence. *Commonwealth v. Weller*, 32 A.3d 273 (Pa. Super. 2013). Appellant did not file a petition for allowance of appeal to our Supreme Court.

On August 8, 2011, Appellant filed a *pro se* PCRA petition. Thereafter, the original attorney appointed by the PCRA court was permitted to withdraw, and new PCRA counsel was appointed. On July 17, 2013, PCRA counsel filed an amended PCRA petition. The PCRA court held an evidentiary hearing on December 11, 2013. Both trial counsel and Appellant testified, and the PCRA court took the matter under advisement. By order and opinion entered May 14, 2014, the PCRA court denied Appellant's PCRA petition. This timely appeal follows. Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues:

> 1. Is the [PCRA] Court's finding that Trial Counsel was not ineffective in failing to request severance of [Appellant's] trial from that of [Briner] supported by evidence of record and free from legal error?
>
> 2. Is the [PCRA] Court's finding that Trial Counsel was not ineffective in failing to properly mitigate the medical evidence presented at trial supported by evidence of record and free from legal error?

- 3 -

3. Is the [PCRA] Court's finding that Trial Counsel was not ineffective in failing to properly prepare herself and [Appellant] for trial supported by evidence of record and free from legal error?

Appellant's Brief at 12.

In reviewing the propriety of an order granting or denying PCRA relief, an appellate court is limited to ascertaining whether the record supports the determination of the PCRA court and whether the ruling is free of legal error. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). We pay great deference to the findings of the PCRA court, "but its legal determinations are subject to our plenary review." ***Id.*** To be entitled to relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that the conviction or sentence arose from one or more of the errors enumerated in section 9543(a)(2) of the PCRA. One such error involves the ineffectiveness of counsel.

To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. ***Id.*** "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." ***Id.*** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner

was prejudiced by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

In assessing a claim of ineffectiveness, when it is clear that appellant has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995). Counsel will not be deemed ineffective if any reasonable basis exists for counsel's actions. *Commonwealth v. Douglas*, 645 A.2d 226, 231 (Pa. 1994). Even if counsel had no reasonable basis for the course of conduct pursued, however, an appellant is not entitled to relief if he fails to demonstrate the requisite prejudice which is necessary under Pennsylvania's ineffectiveness standard. *Douglas*, 645 A.2d at 232. Counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*), *appeal denied*, 852 A.2d 311 (Pa. 2004).

Appellant first claims that trial counsel was ineffective for failing to request severance of his trial from that of Briner, his co-defendant. Appellant asserts that his aggravated assault conviction "was based on his association with [Briner] at trial, and the jury's inability to distinguish his acts from that of [Briner]." Appellant's Brief at 20. According to Appellant,

"[i]f [his] trial had been severed, the Commonwealth would have been forced to identify what, if any, injuries [] Victim suffered as a result of Appellant's actions, and whether or not those injuries caused by Appellant rose to the level of 'serious bodily injury[.]'" Appellant's Brief at 21.

"Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Pa.R.Crim.P. 582(A)(2). "The court may order separate trials of offenses of defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583. Stated differently, separate trials for co-defendants "should be granted only where the defenses of each are antagonistic to the point where such individual differences are irreconcilable and a joint trial would result in prejudice." *Commonwealth v. Rainey*, 928 A.2d 215, 232 (Pa. 2007) (citation omitted). Joint trials are encouraged when judicial economy will be promoted by avoiding expensive and time-consuming duplication of evidence, *Commonwealth v. Jones*, 668 A.2d 491 (Pa. 1995), and when criminal conspiracy is charged. *Commonwealth v. Cull*, 688 A.2d 1191, 1197 (Pa. Super. 1997).

The decision of whether to sever trials of co-defendants is within the sound discretion of the trial court. *Commonwealth v. Lopez*, 739 A.2d

485, 501 (Pa. 1999). Here, the PCRA court rejected Appellant's claim, and explained:

> The Court agrees that, based on Victim's testimony, the jury likely had difficulty in distinguishing which blows came from [Appellant] and which came from [Briner.] However, this is because aside from the initial head-butt from [Briner], Victim was unable to distinguish between the blows of [Appellant] and [Briner]. [He] merely stated that they each struck him five or six times. Similarly, Ms. Dodson testified that both [Appellant] and [Briner] were punching Victim in the face. Had [trial counsel] moved for severance (and had severance been granted), the evidence would still have shown that [Appellant] was punching Victim's face. Therefore, there is no reasonable probability that, but for counsel's alleged ineffectiveness, the outcome of the proceedings would have been different. As such, this claim is denied.
>
> [Appellant] also argues that his familial relationship with [Briner], his half-brother, prevented him from mounting an effective defense. However, at the PCRA Hearing, [trial counsel] indicated that [Appellant] did not indicate a request for severance. Moreover, [Appellant] wished to proceed to trial, maintaining his loyalty to [Briner]. This also weighs against a finding of ineffectiveness because [Appellant] led [trial counsel] to believe that he sought a joint trial, and, believing it not to be a disadvantage, she attempted to effectuate his interests by representing him in one.

PCRA Court Opinion, 5/14/14, at 5-6 (citation omitted).

Our review of the record, including Appellant's own testimony at the PCRA hearing, supports the PCRA court's conclusions. Initially, to the extent the PCRA court's conclusions are based upon its credibility determinations, we cannot disturb them. *See Commonwealth v. Harmon*, 738 A.2d 1023,

- 7 -

1025 (Pa. Super. 1999) (explaining that when a PCRA court's determination of credibility is supported by the record, it cannot be disturbed on appeal).

Appellant cites to no authority for his claim that evidence of Briner's conduct would have been inadmissible in his separate trial. Indeed, in rejecting Appellant's sufficiency claim made in his direct appeal, this Court determined that Appellant was "criminally responsible for the foreseeable acts committed by Briner, who was his accomplice." **Weller**, **supra**, unpublished memorandum at 12. Thus, because Appellant has not met his burden of proof, Appellant's first claim of trial counsel's ineffectiveness fails.[1]

Appellant next claims that trial counsel was ineffective for "failing to properly mitigate the medical evidence presented at trial." Appellant's Brief at 18. According to Appellant, trial counsel was ineffective because she: 1) failed to properly object to Briner's motion *in limine* "which resulted in the withholding of exculpatory medical evidence presented at trial;" 2) failed to object to Victim's "non-expert testimony in violation of Pennsylvania Rule of Evidence 701;" and 3) failed "to investigate or call an expert witness regarding the nature and extent of [Victim's] injuries when the seriousness

_____

[1] Within his brief Appellant also argues that trial counsel was ineffective for failing to inform the jury of his familial relationship to Briner in an attempt to vitiate the requisite intent to support his aggravated assault conviction. Because Appellant did not raise this claim with specificity in his Pa.R.A.P. 1925(b) statement, the PCRA court did not address it. Thus, the claim, which Appellant inappropriately raised for the first time on appeal, is waived. **See generally**, Pa.R.A.P. 302.

of said injuries was a material element of the aggravated assault charge."

Appellant's Brief at 18. We address each of Appellant's claims separately.

In rejecting Appellant's initial claim, the PCRA court reasoned:

> [Appellant] first argues that excluded medical evidence could have shown that Victim's injuries were not "serious," as required for conviction of Aggravated Assault. He argues that [trial counsel] should have objected to [Briner's] Motion in Limine regarding a hospital discharge sheet, a pamphlet on orbital injuries, and a compact disc. [According to Appellant,] [t]he box next to "orbital fracture" on the discharge sheet was not checked and [Appellant] argues that it could have been used to impeach Victim's statement that he sustained an orbital fracture. [Appellant] also argues that [trial counsel] failed to perform a reasonable investigation with respect to the medical records on the compact disc, [PCRA counsel] stating that such records are "relevant." [Trial counsel] testified that she believed the lack of this [medical] evidence [due to the Commonwealth's discovery violation,] would benefit [Appellant] because it would make it more difficult for the Commonwealth to prove its burden of [establishing] serious bodily injury. This was a reasonable basis for [trial counsel's] failure to oppose the motion, especially in light of her closing argument that the Commonwealth had not met its burden, and any reasonable basis for a course of conduct establishes that [trial counsel] was not ineffective.
>
> Furthermore, [Appellant's] argument makes much of the possibility that, without evidence of an orbital fracture, the jury might not have found a serious bodily injury. However, this does not fully account for the definition of "serious bodily injury," which includes a "protracted loss or impairment of the function of any bodily member or organ." Indeed, after discussing Victim's broken eye socket, the Superior Court [in Appellant's direct appeal] found that Victim's inability to drive, his inability to blow his nose for two weeks, his seizure, and his prolonged headache constituted serious bodily injury. [**Weller**, **supra**]. This claim is denied because, in addition to failing to prove that [trial] counsel's course of action had no

reasonable basis, [Appellant] has also failed to show prejudice.

PCRA Court Opinion, 5/14/14, at 6-7 (citations omitted).

Once again, our review of the record supports the trial court's conclusions. In addition, we note that Appellant attached the Victim's hospital discharge sheet as an exhibit to his *pro se* PCRA petition. Our review of this document reveals no "orbital fracture" box that was not "checked." While a box marked "fracture" was not marked at the top of the discharge sheet, further down the document under the heading "SPRAINS, STRAINS, BRUISES, FRACTURES" a box was checked informing Victim how to treat his injury. Thus, as the record refutes Appellant's claim that trial counsel failed to use "exculpatory medical evidence," Appellant's ineffectiveness claim fails.

The PCRA court addressed Appellant's claim involving trial counsel's failure to object to Victim's testimony as follows:

> Next, Appellant takes issue with [trial counsel's] failure to object to Victim's non-expert medical testimony. Of course, a lay witness may only offer testimony that is rationally based on his perception and cannot testify as to evidence which is based on specialized knowledge within Pa.R.E. 702. [**See**] Pa.R.E. 701. Although [Appellant] is correct that it requires specialized knowledge to testify that nothing can be done for a broken eye socket, he has failed to show that he was prejudiced by [trial counsel's] failure to object. The month-long blood and redness in Victim's eyes were clearly within the ambit of lay testimony. Also, it is well within Victim's perception to testify that he was given "more CAT scans and everything" after his seizure, regardless of whether Victim could interpret such scans. Even assuming that Victim would

have been precluded from testifying as to a broken eye socket and seizure, his testimony regarding the redness and blood in his eyes formed the basis for a finding of serious bodily injury. This confirms that there is no reasonable probability that the outcome would have been different, even had [trial counsel] cross-examined Victim with the discharge sheet. This claim is denied.

PCRA Court Opinion, 5/14/14, at 7.

We agree. As stated by the PCRA court **supra**, this Court has already determined that, even without considering the fractured "orbital sockets," Victim's proper lay testimony regarding the prolonged effect of the assault established "serious bodily injury" sufficient to support Appellant's aggravated assault conviction. Thus, because Appellant cannot establish prejudice, his ineffectiveness claim fails. **Travaglia**, **supra**.

In his remaining claim regarding the failure to "mitigate" the medical evidence, Appellant asserts that trial counsel was ineffective for failing to call an expert witness to testify that Victim did not suffer a serious bodily injury. According to Appellant, "any medical doctor could have been called to testify as an expert regarding the extent of [Victim's] injuries." Appellant's Brief at 29-30. Appellant further contends that, "[t]his failure to produce a medical expert prejudiced" him because there was no expert testimony presented to aid the jury in determining whether the Commonwealth met its burden of proving "serious bodily injury." **Id.** at 30.

In order to establish that trial counsel was ineffective for failing to investigate and/or call a witness at trial, a PCRA petitioner must demonstrate that:

- 11 -

(1) the witness existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness or should have known of the witness's existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant.

*Commonwealth v. Hall*, 867 A.2d 619, 629 (Pa. Super. 2005) (quoting *Commonwealth v. Bomar*, 826 A.2d 831, 856 (Pa. 2003)).

The PCRA court correctly concluded that Appellant did not meet his burden. Indeed, at the PCRA hearing, Appellant failed to meet any of the above-listed *Hall* factors. Appellant's bare assertion that "any medical doctor could have testified regarding the severity of Victim's injuries" is insufficient; the applicable burden of proof required Appellant to proffer an expert who, at the time of trial, would have been ready, willing and able to testify that Appellant's injuries were not "serious." Additionally, as noted by the PCRA court, "the PCRA requires a reasonable *probability* that the outcome of the proceedings would have been different, not a mere possibility that an [unknown] expert's opinion on whether [] Victim's injuries were 'serious' would have swayed the jury." PCRA Court Opinion, 5/14/14, at 8.

Thus, because each of the arguments put forth by Appellant are meritless, his claim that trial counsel was ineffective for failing to mitigate the medical evidence presented by the Commonwealth fails.

In Appellant's final issue, he makes the general assertion that trial counsel was ineffective for failing to adequately prepare both herself and Appellant for trial. Appellant lists the following instances in which trial counsel was ineffective: 1) "her failure to have a court reporter present at [his] Preliminary Hearing;" 2) "in failing to properly confront and cross-examine the Commonwealth's witness;" 3) "in failing to discuss with [him] whether he would testify prior to trial;" and 4) "in failing to move for the dismissal of [his] aggravated assault charge, after the Commonwealth rested its case without proving all of the essential elements of the crime." **See** Appellant's Brief at 32-38. We address each argument separately.

Appellant first claims that trial counsel was ineffective for failing to ensure the presence of a court reporter to transcribe his preliminary hearing. Unfortunately for Appellant, this claim was never raised in either his *pro se* or amended PCRA petition. Thus, it inappropriately is being raised for the first time on appeal. It is therefore waived, and will not be discussed further. **See generally**, Pa.R.A.P. 302(a).

Appellant next argues that trial counsel was ineffective for failing to properly cross-examine Commonwealth witness, Ashley Dodson, as to the scope of her prior relationship with Briner, his half-brother and co-defendant. Although Appellant concedes that trial counsel did ask Ms. Dodson whether she ever dated Briner, he asserts that "[trial counsel] failed to further explore the connection by asking whether she "ever hooked up

with, or had relations that were sexual in nature." Appellant's Brief at 34. According to Appellant, such questioning would have revealed that "Ms. Dodson and [Briner] had a prior romantic history, which was an instigating factor in the fight which [Briner] initiated." *Id.*

Our review of the record supports the PCRA court's rejection of Appellant's meritless claim. As it notes, trial counsel did ask Ms. Dodson if she had ever dated Briner, and received a negative answer. N.T., 9/30/10, at 83. Given this response, any further inquiry as that suggested by Appellant would be inappropriate. *See e.g.*, *Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa. Super. 2001) (explaining that, in exercising its discretion, a trial court may preclude cross-examination on collateral matters).

Appellant next argues that trial counsel was ineffective for failing to discuss with him prior to trial whether he would testify on his own behalf. According to Appellant, because trial counsel "had not prepared him in advance [] with respect to what his testimony would be if he took the stand," he "felt put on the spot when the issue of whether he would testify presented itself during trial." Appellant's Brief at 36.

This Court has summarized:

> [T]he decision to testify on one's own behalf is ultimately to be made by the accused after full consultation with counsel. In order to support a claim that counsel was ineffective for failing to call the appellant to the stand, the appellant must demonstrate either that (1) counsel interfered with his client's freedom to testify, or (2) counsel gave specific

- 14 -

advice so unreasonable as to vitiate a knowing and intelligent decision by the client not to testify in his own behalf. Counsel is not ineffective where counsel's decision to not call the defendant was reasonable.

*Commonwealth v. O'Bidos*, 849 A.2d 243, 250 (Pa. Super. 2004).

The PCRA court found no merit to Appellant's claim:

This case, [unlike *Commonwealth v. Breisch*, 719 A.2d 352 (Pa. Super. 1998),] is not one of a defendant requesting to testify and being denied the opportunity by counsel. By [Appellant's] own admission at the PCRA hearing and [trial counsel's] testimony, [trial counsel] met with [Appellant] several times prior to trial. They also discussed whether he would testify during a recess at the trial.

In addition, [trial counsel] indicated that, due to [Appellant's] prior record, she thought that it might be inadvisable for [him] to take the stand. However, nothing indicates that she gave any specific advice which interfered with [Appellant's] ability to make a knowing and intelligent decision. The Court's finding that [Appellant's] decision was knowing and intelligent is buttressed by the fact that the [trial court] conducted a lengthy discussion with [Appellant] regarding whether he would testify, after which [Appellant] indicated that he did not wish to testify *and that was his decision*. **See** [N.T., 9/30/10, at 89-92]. Considering [Appellant's] deliberations with [trial counsel], as well as his response to the [trial court's] discussion, this claim lacks arguable merit.

PCRA Court Opinion, 5/14/14, at 9.

Our review of the record supports the PCRA court's conclusion that Appellant knowingly and intelligently decided to forgo testifying on his own behalf. *See e.g.*, *Commonwealth v. Wallace*, 500 A.2d 816, 819 (Pa. Super. 1985) (rejecting PCRA petitioner's ineffectiveness claim when the petitioner had informed the trial court that he was satisfied with trial

counsel's advice not to take the stand). Moreover, we reject Appellant's bare assertion that he was prejudiced "because his testimony would have led to a reasonable probability of an acquittal of the aggravated assault charge." Appellant's Brief at 38. Appellant cannot establish prejudice because he has not proffered on appeal specifically what testimony he would have provided which would have caused the jury to alter its verdict. *See Commonwealth v. Alderman*, 811 A.2d 592, 596 (Pa. Super. 2002) (concluding that the petitioner failed to establish that he was prejudiced by counsel's alleged failure to inform him about his right to testify; "absent an offer of proof [petitioner] has failed to demonstrate how his failure to testify resulted in a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different").

Lastly, Appellant argues that trial counsel was ineffective for failing to move for the dismissal of his aggravated assault charge at the conclusion of the Commonwealth's case. Given this Court's determination that the Victim suffered serious bodily injury, *Weller*, *supra*, Appellant cannot establish that a motion for acquittal would have been granted. Thus, trial counsel cannot be deemed ineffective for failing to pursue this meritless claim. *Loner*, *supra*. Moreover, because each ineffectiveness claim regarding trial counsel's preparation for trial lacks merit, Appellant's final issue on appeal fails.

In sum, Appellant has failed to meet his burden of proving that trial counsel was ineffective in her representation of Appellant at trial. We therefore affirm the PCRA court's order denying post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/9/2015