**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JHERI LAMAR MATTHEWS, | |
| Appellant | No. 1135 WDA 2016 |

Appeal from the PCRA Order entered June 2, 2016,
in the Court of Common Pleas of Allegheny County,
Criminal Division, at No(s): CP-02-CR-0016067-2005.

BEFORE:  MOULTON, RANSOM, and PLATT,* JJ.

MEMORANDUM BY RANSOM, J:                    **FILED MAY 25, 2017**

Appellant, Jheri Lamar Matthews, appeals *pro se* from the order entered June 2, 2016, denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The pertinent facts and procedural history have been summarized as follows:

Appellant was charged with homicide and criminal conspiracy arising from the shooting death of Keith "Spud" Watts outside Carrick High School on March 16, 2005.  The Commonwealth presented extensive circumstantial evidence that Appellant and his co-defendants, Shawn Wilmer and Howard Kelley, conspired to kill the victim because they believed that the victim had shot Appellant in the neck nine months earlier, in June 2004.

The web of evidence to support this conclusion may be summarized as follows.  One day after Appellant was shot, co-

_____

*Retired Senior judge assigned to the Superior Court.

defendant Kelley and two other men (Nathan Walters and Walter Hill) drove around looking to get revenge on the victim. All three men opened fire on a group of people standing on the street, but the victim was not injured at that time. On February 9, 2005, two people opened fire on the house where the victim and his grandmother resided. Appellant and Kelley talked about how Appellant had shot the victim, but missed.

Finally, the Commonwealth presented evidence that at 1:45 p.m. on March 16, 2005, co-defendants Wilmer and/or Kelley drove up in a Hyundai Sonata, opened fire on the victim, and killed him as he was sitting in the driver's seat of his vehicle. Seven shell casings were recovered from the Sonata. The evidence did not establish that Appellant was the shooter, and did not conclusively establish that he was in the Sonata at the time. On the other hand, the Commonwealth showed that a receipt from a McDonald's restaurant bearing Appellant's fingerprint was found in the Sonata bearing a time-stamp of noon on March 16, less than two hours before the shooting.

Moreover, after the shooting, Walters met with all three co-defendants. According to Walters, co-defendant Kelley said, "… we got that [n*****]," while Appellant nodded his head. At that time, co-defendant Kell[e]y argued with co-defendant Wilmer about whose gun actually fired the fatal shot. Finally, according to Davis, co-defendant Kelley talked about how Kelley and Appellant were lying in wait for the victim, discussing whether the safety on the rifle was on or off.

A jury acquitted Appellant of murder, but convicted him of conspiracy. On November 5, 2007, Appellant was sentenced to 20 to 40 years' imprisonment.

***Commonwealth v. Matthews***, 986 A.2d 1259, *1-3 (Pa. Super. 2009)

(unpublished memorandum) (footnotes omitted).[1]

_____

[1] The jury found both co-defendants guilty of criminal homicide and conspiracy. The trial court sentenced them both to life in prison.

Appellant timely filed an appeal to this Court, in which he claimed that the trial court abused its discretion in not granting his continuance request and in which he challenged the sufficiency of the evidence supporting his conspiracy conviction. Finding no merit to either claim, this Court affirmed on September 30, 2009. **Matthews**, **supra**.

On February 25, 2010, Appellant *pro se* and timely filed a petition for collateral relief. The PCRA court appointed counsel; PCRA counsel filed an amended petition on May 27, 2011; and the Commonwealth filed its answer on June 6, 2011. Thereafter, the PCRA court granted Appellant the right to file a *nunc pro tunc* petition for allowance of appeal.[2] PCRA counsel did so, and our Supreme Court denied allowance of appeal on March 27, 2012. **Commonwealth v. Matthews**, 40 A.3d 1235 (Pa. 2012), *cert. denied*, 133 S. Ct. 270 (October 1, 2012).

Appellant *pro se* filed another PCRA petition on August 29, 2013. The PCRA court appointed counsel, and, on September 24, 2014, PCRA counsel filed a "no-merit" letter and motion to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On January 9, 2015, the PCRA Court sent Appellant Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition. Appellant responded by seeking leave to amend his petition and subsequently filed an amended petition on June 29, 2015. The PCRA court again sent Rule 907 notice to Appellant on

---

[2] The Commonwealth did not appeal the order granting *nunc pro tunc* relief. Accordingly, this Court did not review the PCRA court's decision.

- 3 -

December 8, 2015, and Appellant again filed a response. By order entered June 2, 2016, the PCRA court dismissed Appellant's petition. This timely appeal follows. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues:

1. The [PCRA] court erred in dismissing [Appellant's] claim that trial counsel [] rendered ineffective assistance by not impeaching Nathan Walter with his prior inconsistent statement.

2. The [PCRA] court erred in dismissing [Appellant's] claim that trial counsel rendered ineffective assistance by failing to file a timely severance motion.

Appellant's Brief at 4.

When examining a post-conviction court's grant or denial of relief, we are limited to determining whether the court's findings were supported by the record and whether the court's order is otherwise free of legal error. *Commonwealth v. Quaranibal*, 763 A.2d 941, 942 (Pa. Super. 2000). We will not disturb findings that are supported in the record. *Id.* The PCRA provides no absolute right to a hearing, and the post-conviction court may elect to dismiss a petition after thoroughly reviewing the claims presented and determining that they are utterly without support in the record. *Id.*

Because Appellant's claims challenge the stewardship of trial counsel, we apply the following principles. The law presumes counsel has rendered effective assistance. *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). The burden of demonstrating ineffectiveness rests on the

petitioner. *Id.* To satisfy this burden, a petitioner must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonably probability that the outcome of the challenged proceedings would have been different." *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). Failure to satisfy any prong of the test will result in rejection of the petitioner's ineffective assistance of counsel claim. *Commonwealth v. Jones*, 811 A.2d 994, 1002 (Pa. 2002).

In assessing a claim of ineffectiveness, when it is clear that a petitioner has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995). Counsel will not be deemed ineffective if any reasonable basis exists for counsel's actions. *Commonwealth v. Douglas*, 645 A.2d 226, 231 (Pa. 1994). Even if counsel had no reasonable basis for the course of conduct pursued, however, a petitioner is not entitled to relief if he fails to demonstrate the requisite prejudice which is necessary under Pennsylvania's ineffectiveness standard. *Douglas*, 645 A.2d at 232.

Appellant first claims that trial counsel was ineffective for failing to impeach Nathan Walters with a prior inconsistent statement. In making his

argument, Appellant relies on a statement that Walters made to police in which he described Appellant's participation in the conversation between Wilmer and Kelley as, "basically listening, determining what everybody was saying. He didn't say much." In contrast, as summarized above, Walters testified that Appellant was nodding in agreement. According to Appellant, had trial counsel cross-examined Walters regarding this prior inconsistent statement,

> [he] would not have had to get on the witness stand and contradict that evidence in order to shine light on dark areas in his case. Those dark areas being the unimpeached testimony from Walters who was the only Commonwealth witness to accuse [Appellant] of being a conspirator in this crime. In [**Commonwealth v. Lively**, 610 A.2d 7 (Pa. 1992)], the third witness's statement was properly admitted once the witness testified differently at trial.

> In [Appellant's] case, all [trial counsel] had to do was confront Walters about why his testimony was different from his prior statement, admit it, and that would of made Walters' credibility unbelievable [sic]. He would of dug his own grave explaining why his story changed squarely on the requirements needed to fulfill a conspiracy against [Appellant] and that would have been effective assistance.

> The [PCRA] Court had a chance to make it right by agreeing with [Appellant] that impeaching Walters was in [Appellant's] best interest and that [trial counsel] was ineffective for not admitting Walters' prior inconsistent statement as substantive evidence once Walters testified differently but they didn't . . . [sic] they just couldn't make it right.

Appellant's Brief at 9.

The PCRA court found no merit to Appellant's claim, given Appellant's testimony at trial:

- 6 -

[Appellant's] claim that [trial] counsel was ineffective for not seeking the admission of Nathan Walters' inconsistent statement as evidence will be dismissed because counsel had a reasonable basis for not doing so in that this witnesses' out of [court] statement that [Appellant] "didn't say much" while present in the attic with the co-defendant[s] contradicted [Appellant's trial] testimony that he was not, in fact, present at all. Counsel clearly has a reasonable basis not to present testimony that would have contradicted [Appellant's] own testimony[.]

Pa.R.Crim.P. 907 Notice, 12/8/15, at 1. Our review of the record supports that PCRA court's conclusion.

Moreover, our review of the record refutes Appellant's assertion that Walters was the only Commonwealth witness to implicate Appellant as co-conspirator. *See*, *e.g.*, N.T., 5/1/07, at 672 (Commonwealth witness Shawn Davis testifying that after the shooting, co-defendant Kelley informed him that Kelley and Appellant waited for victim to leave the high school).

Finally, Appellant cannot establish that he was prejudiced by trial counsel's inaction, given the other circumstantial evidence supporting the conspiracy. As we stated in rejecting Appellant's sufficiency challenge on direct appeal:

In the instant case, Appellant argues that the only evidence linking him to the killing was the McDonald's receipt and the fact that he nodded while his co-defendants stated that they had shot the victim.

We disagree. As noted above, the Commonwealth presented extensive circumstantial evidence from which the jury could conclude that Appellant entered into a conspiracy with his co-defendants to kill the victim in retaliation for shooting Appellant. Again, Kell[e]y and two other men first tried to retaliate against the victim shortly after Appellant was shot. Later, Appellant and Kell[e]y

- 7 -

shot at the victim's house. A jury could conclude beyond a reasonable doubt that on the final attempt, Appellant was in the shooters' vehicle shortly before the murder, had known about the killing, was at the scene of the crime, and had agreed to the murder. This web of evidence was sufficient to prove the elements of conspiracy.

*Matthews*, *supra*, unpublished memorandum at 7-8. Thus, for all of these reasons, Appellant's first claim of ineffectiveness fails.

In his remaining claim, Appellant asserts that the trial counsel was ineffective for failing to timely file a motion for severance. Initially, we find this specific claim waived because Appellant raised it for the first time in his Pa.R.A.P. 1925(b) statement. *See generally Commonwealth v. Tejada*, 107 A.3d 788 (Pa. Super. 2015). The claim originally raised by Appellant and addressed by both PCRA counsel in his "no-merit" letter, and the PCRA court in its Rule 907 notice, was whether appellate counsel was ineffective for not raising the trial court's denial of the severance claim as an issue in Appellant's direct appeal. *See* No-Merit Letter, 9/9/14, at 5; Rule 907 Notice, 12/8/15, at 2.

Nevertheless, both claims lack merit. The decision of whether to sever trials of co-defendants is within the sound discretion of the trial court. *Commonwealth v. Lopez*, 739 A.2d 485, 501 (Pa. 1999). "Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Pa.R.Crim.P. 582(A)(2). "The court may order separate trials of offenses of

defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583. Joint trials are encouraged when judicial economy will be promoted by avoiding expensive and time-consuming duplication of evidence. ***Commonwealth v. Jones***, 668 A.2d 491 (Pa. 1995). Joint trials are preferred when conspiracy is charged. ***Commonwealth v. Cull***, 688 A.2d 1191, 1197 (Pa. Super. 1997).

Our review of the record refutes Appellant's assertion that trial counsel's motion for severance was denied because it was filed untimely. Rather, the trial court denied the motion on its merits. ***See*** N.T., 4/24/07, at 58-59 (trial counsel renews motion for separate trials, and the trial court explains why such a request would be denied). As noted above, all three defendants were charged with criminal homicide and conspiracy based on the victim's death. Thus, joint trial is preferred. ***Cull***, 688 A.2d at 1197. Moreover, there is every indication that, given the large trial transcript, joint trial would avoid the "time-consuming duplication of evidence." ***Jones***, ***supra***. Thus, Appellant's second and final claim of trial counsel's alleged ineffectiveness fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/25/2017